### KENNEDY *v.* DINGMAN.

DRAINS—SEWERS—METHOD OF CONSTRUCTION—PURPOSE.

    In drainage district consisting of 7,532 acres of flat land, closed drain, consisting of single and double barrels of diameters varying from 3 to 6 feet, built without porous joints in plastic blue clay, of monolithic re-enforced concrete, pre-cast re-enforced concrete pipe and two ring brick construction, placed from 4 feet 6 inches to 10 feet 5 inches beneath the surface, having 140 manholes and 120 catchbasins, costing $1,494,797, and into upper ends of which open ditches empty *held*, drain, the construction of which was within the then jurisdiction of county drain commissioner, notwithstanding that, although its primary purpose was that of drainage, it was capable of caring for sewage, was planned, incidentally, to do so for a portion of the territory and did in fact dispose of a small amount of sewage (Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925).

Appeal from Wayne; Toms (Robert M.), J. Submitted April 10, 1935. (Docket No. 44, Calendar No. 38,268.) Decided May 17, 1935.

Bill by Charles J. Kennedy and others against George A. Dingman, former County Drain Commissioner, and others to enjoin the collection of assessments and for other relief. City of Lincoln Park intervened as party plaintiff. Decree for defendants. Plaintiffs appeal. Affirmed.

*John H. Yoe* (*Frederick McGraw,* of counsel), for plaintiffs.

*Sweetman G. Smith,* Assistant Prosecuting Attorney, for defendants.

*Oscar A. Kaufman, amicus curiæ.*

BUTZEL, J. Plaintiffs are the owners of parcels of land in the "LeBlanc drainage district" situated in the southeasterly part of Wayne county, Michigan. Many of them are proprietors of subdivisions, others are farmers and the city of Lincoln Park has also intervened as a party plaintiff. They seek to set aside the entire proceedings to establish the drainage district and construct the drain, and also ask the return of all assessments already paid and a cancellation of those not paid. The LeBlanc drain was completed in 1928, following proceedings instituted in 1925. Plaintiffs claim that the entire project was for the purpose of building a sewer and that the facts resemble those in the cases, hereinafter referred to in the opinion of the trial judge, where proceedings were held to be fatally defective because, under the drain law then in force (Act No. 316, Pub. Acts 1923, as amended by Act No. 365, Pub. Acts 1925), the drain commissioner could not acquire jurisdiction to construct a sanitary sewer. Otherwise no objection is made in the instant case to the regularity of all proceedings to establish the

LeBlanc drainage district, construct the drain, and fix and levy the assessments.

Plaintiffs contend that the high cost of the structure itself proves it is not a drain and that the assessments are disproportionately high when compared with the present value of the property assessed. The latter claim is largely offset by the fact that at the time the proceedings were instituted and the assessments levied, a very large part of the property had been subdivided and sold at $3,500 an acre, and the land was considered very valuable. A large number of homes were being or had been erected and there was a demand for a closed drain sufficient for the removal of surface waters and as a substitute for the insanitary and often malodorous open drain of considerable depth. The trial judge so ably expressed the conclusions we have reached that we adopt his opinion, supplementing it only with a few additional statements:

"The project involved in this cause, known as the LeBlanc drain, was built by the county drain commissioner under proceedings, the regularity of which is not questioned. The drainage district comprises 7,532 acres in the western part of Wayne county and includes the city of Lincoln Park, the village of Allen Park and certain unorganized township territory. From Pelham road south of the Ecorse river the work consists of underground single and double barrel construction, varying in diameter from 36 to 72 inches. Some of the work consists of monolithic re-enforced concrete construction, some of pre-cast re-enforced concrete pipe and some of two ring brick. The depth from the ground level to the top of the barrel varies at different locations from 4 feet 6 inches to 10 feet 5 inches. In connection with the drain there are 140 manholes and 120 catch basins. The cost of the underground construc-

tion was $1,494,797. The portion of the drainage district north of Pelham road is served by open drainage districts (ditches?) which empty through catch basins into the underground barrels. From Pelham road to the Ecorse river the ground level falls about one foot per thousand. Generally the territory is very flat and drains slowly. The earth in this section is composed of plastic blue clay which is almost entirely impervious to water, even under pressure, with a thin top soil of sandy loam. A few houses in one portion of the city of Lincoln Park drain domestic sewage into the barrel, but by far the greater portion of that city is served by a separate municipal sewer system. Another small group of houses further to the north also use the drain for the same purpose.

"It is the claim of plaintiffs that this project is in law and fact a sewer which the drain commissioner had no authority to construct and which land owners in the drainage district are not liable to assessment.

"With the cases of *Clinton* v. *Spencer,* 250 Mich. 135, and *Township of Lake* v. *Millar,* 257 Mich. 135, in mind, the answer to plaintiffs' contentions seemed quite obvious until the case of *Hankinson* v. *Deake,* 265 Mich. 1, was handed down. The LeBlanc drain is less like a sewer than the project involved in *Township of Lake* v. *Millar,* because it has no pumping station or filtration plant connected with it, but it is also more like a sewer than the project involved in *Hankinson* v. *Deake,* because it is monolithic construction without porous joints. In size, design, the nature of the terrain served and other notable respects it is confusingly similar to both the sewer in the *Township of Lake Case* and the drain in the *Hankinson Case.* Any attempt to state with any degree of certainty that it conforms to one not the other is fraught with obstacles and involves niceties of distinction which are difficult to recognize as controlling.

"In the *Hankinson Case* the Supreme Court said:

" 'If a drain of this size and character was necessary in the judgment of the commissioner, for the adequate drainage of the district and was designed and constructed for that purpose, it matters not that it is capable of being used as a sewer. * * * The proceedings followed by the commissioner are authorized by the drain law and are not to be invalidated because the drain constructed resembles a sewer or is capable of being used as a sewer. It was designed and built for drainage and the record shows that it effectively serves that purpose.'

"If this language may be safely adopted as a guide, the project in the instant case is undoubtedly a drain. In view [of] the nature of the soil there was no need for porous joints for the purpose of sub-surface drainage. Drainage of that character cannot be accomplished through plastic blue clay which is so impervious to water that it is used by engineers for bulkheading. The size of the pipe used here was adequate for a drain, but many times too large for a sewer. The need of additional modernized equipment for surface drainage in this district is not seriously disputed. Sixty per cent. of the cost of construction was expended in Lincoln Park where there was an adequate sewer system installed before this drain was built. The project was laid generally on the site of an old open drain which had existed for many years. Between Pennsylvania avenue and the outlet the barrel was not laid deep enough to serve at all as a sewer. From Pennsylvania avenue north to Pelham road only a small portion of the district could use the barrel for sewage. On Pelham road it would probably be possible to secure tolerable sewer service.

"As opposed to these facts it must be recognized that the barrel, even if not laid deep enough for sewage purposes, is laid deeper than is necessary for surface drainage purposes. Also, it is used to some slight extent for sewage disposal. The witness, Edwin H. Pate, one of the engineers in charge of the construction of the project, testified that he planned from the first to use the drain for sewage disposal

in territory outside of the city of Lincoln Park where no other means of disposal was available. He testified further that the design of the sewer, so far as its size was concerned, was based on the run off of storm water, and that the municipal sewer system in Lincoln Park was sufficient to carry off its domestic effluent.

"It must be apparent then, that this project partakes of some of the characteristics of both a sewer and a drain, and that the line of demarcation which would stamp it unmistakably as one or the other is difficult to discern. The court is firmly convinced that hair-splitting distinctions should not be resorted to as a means for invalidating a project in which large sums of public money have been expended and which adequately serves an admitted public purpose. The security of the bonds as public obligations should not be so lightly jeopardized. If the prospective purchaser of drain bonds must resort to almost imperceptible niceties of distinction and must make a microscopic examination of all the engineering factors involved in a proposed public project before he may safely invest his capital, at the risk of losing his investment if his conclusion is wrong, the financing of public improvements of this nature will be most hazardous. Admitting, as we must, that the constitutional limitations upon the authority of public officers must be scrupulously preserved and that *ultra vires* acts should in no case be condoned by judicial approbation, it seems clear that courts should not resort to specious reasoning, nor superfine differentiations in order to nullify the acts of public officers who have acted in good faith and in the belief that they were exercising lawful powers, especially when, as in this case, there is substantial ground for confirming their belief.

"The LeBlanc drain is a drain and not a sewer. A decree may be entered dismissing the bill of complaint."

We might further add that in the case of *Clinton v. Spencer, supra,* the entire proceedings from their inception were for the purpose of building a sewer. In the case of the *Township of Lake v. Millar, supra,* as stated in the opinion, a sewer was built about 7½ miles long, in places 35 feet below the surface, with a circular concrete barrel ranging from 6 to 11 feet in diameter, and with a purifying plant for sewage treatment in connection therewith. However, in the instant case almost one-half of the drains in the LeBlanc drainage district were open drains that led into the closed drain, which in turn led into the Ecorse river. The open drains were in existence long before the closed drain was built. While it is true that the structure was called a "sewer" in a later report of an engineer, and the term "sewer" was used interchangeably with the word "drain" in the testimony of some of the witnesses, for which ample authority is given by the lexicographers, the record shows that the main and primary purpose was the construction of a drain and not a sewer, although in a few instances the latter use might become incidental. Had the main purpose been that of a sewer, and drainage been incidental, a different question would be presented.

In view of the majority decision in the case of *Hankinson v. Deake,* 265 Mich. 1, recently decided by this court, where the record shows that vitrified pipe, re-enforced concrete pipes, manholes, etc., were used we conclude that the structure was a drain and we affirm the decision of the trial court in dismissing the bill of complaint, with costs to defendants.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.