CITY OF HIGHLAND PARK *v.* OAKLAND COUNTY
DRAIN COMMISSIONER.

1. DRAINS—SEWERS—UNDERGROUND CONDUITS—VITRIFIED CROCKS.

Drain, consisting of underground conduits from 12 to 54 inches in diameter and made of vitrified, double-strength sewer crock, with catch basins for surface waters, and Y's for sanitary sewer connections to each residential lot, capable of caring for sanitary sewage and surface waters of the whole area of the district, constituted a sewer and not a drain (Act No. 316, Pub. Acts 1923, as amended by Acts Nos. 288 and 365, Pub. Acts 1925, and Act No. 80, Pub. Acts 1927).

2. JUDGMENT—RES JUDICATA—PARTIES.

Decision of a previous case relating to a particular sewer would not be *res judicata* as to holders of bonds issued for construction thereof where bondholders were not a party in previous case nor did the bondholders have their day in court through representation by county drain commissioner in previous case.

3. COURTS—STARE DECISIS—MANDAMUS—EQUITY.

Under the rule of *stare decisis* where previous decision in a case involving same sewer as that involved in instant case resulted in holding that the levy and collection of any tax assessed therefor would be a deprivation of property without due process, a holding in mandamus proceeding by holders of bonds to compel levy of tax to pay bonds that tax to pay bonds would be likewise invalid is required even though equitable considerations might prompt a different result.

4. MUNICIPAL CORPORATIONS—OFFICERS—ESTOPPEL.

Generally a municipal corporation cannot be estopped by the unauthorized and illegal acts of its officers.

5. COUNTIES—OFFICERS—ESTOPPEL—AUTHORITY.

The board of supervisors of a county cannot be estopped from denying liability for drainage district bonds because of acts of a drain commissioner where latter official had no legal authority to speak for the board and county clerk's counter signature was merely a ministerial act.

6. DRAINS—COMMISSIONER'S AUTHORITY—BONDS.

Action of county drain commissioner in building a sewer drain
when he had no legal authority to do so was beyond his
jurisdiction and void and cannot estop the drain district from
disclaiming liability for bonds notwithstanding taxpayers
thereof have profited by commissioner's unauthorized acts
(Act No. 316, Pub. Acts 1923, as amended by Acts Nos.
288 and 365, Pub. Acts 1925, and Act No. 80, Pub. Acts
1927).

7. COSTS—PUBLIC QUESTION—TAX FOR PAYMENT OF SEWER DRAIN
BONDS.

No costs are allowed in mandamus proceeding to compel levy
of tax for payment of sewer drain not then authorized by
law, a public question being involved (Act No. 316, Pub.
Acts 1923, as amended by Acts Nos. 288 and 365, Pub. Acts
1925, and Act No. 80, Pub. Acts 1927).

8. BONDS—VALIDITY—DRAINS—SEWERS.

The validity of bonds issued for the construction of drains de-
pends upon the facts and circumstances under which they
were issued.

9. DRAINS—SEWERS—DISTINCTION BASED ON PRIMARY PURPOSE OF
STRUCTURE.

The controlling legal distinction between sewers and drains
is the primary purpose of the structure determining its char-
acter, regardless of purely incidental purposes.

Petition by the City of Highland Park and others
for a writ of mandamus compelling Earl L. Clark,
Drain Commissioner of Oakland County, and Oak-
land County Board of Supervisors to levy and
spread taxes to pay bonds of Royal Oak No. 7 Storm
Sewer Drain District. Submitted October 7, 1941.
(Calendar No. 41,690.) Writ denied February 11,
1942. Rehearing denied March 17, 1942.

*Earl B. Young, Levin, Levin, Garvett & Dill,
Voorhies, Long, Ryan & McNair,* and *Dykema, Jones
& Wheat (Thomson, Wood & Hoffman,* of counsel),
for relators.

*Charles L. Wilson,* Prosecuting Attorney, and *Harry J. Merritt,* Corporation Counsel, for respondents.

*Herbert J. Rushton,* Attorney General, and *Edmund E. Shepherd,* Solicitor General, for State of Michigan, intervener.

*Thomas F. Chawke, Joslyn, Joslyn & Joslyn, Alex. J. Groesbeck, Hugh Francis, Bernard F. Powell, Bert V. Nunneley, Charles Retzlaff, John H. Yoe, Kenneth J. McCallum, Hill, Hamblen, Essery & Lewis,* and *John P. O'Hara, amici curiae.*

BUSHNELL, J.    Relators, who claim to be bona fide holders for value of bonds issued by Royal Oak No. 7 storm sewer drain district in the township of Royal Oak, Oakland county, Michigan, seek a writ of mandamus directing and commanding respondents, the drain commissioner of Oakland county, and the board of supervisors of that county, to severally and collectively perform such acts as will result in the levy, certification, and spread of all unpaid portions of the instalments of taxes levied for this drain, and such supplemental or deficiency assessment as shall be sufficient to pay all outstanding bonds of the district.    We issued an order to show cause and it was stipulated between the parties that the answer of the drain commissioner and the board of supervisors should stand as the return to that order.

The proceedings to establish this drainage district were instituted on June 3, 1927, under Act No. 316, Pub. Acts 1923, as amended by Acts Nos. 288, 365, Pub. Acts 1925, and Act No. 80, Pub. Acts 1927 (see 1 Comp. Laws 1929, § 4838 *et seq.* [Stat. Ann. § 11.1 *et seq.*]), which authorizes only the construc-

tion of drains. This act has since been amended. (Act No. 318, Pub. Acts 1929, and others) and now includes provisions for the building of sewers and sewage facilities in connection with drains. The proceedings progressed in the usual manner and bonds in the par amount of $191,000 were issued. The entire issue was purchased by a brokerage house in the city of Detroit and payment therefor was made to the county treasurer. The bonds were resold to various investors and these relators now hold 150 bonds of the outstanding issue.

The construction was of an underground type, of vitrified, double-strength sewer crock, with catch basins for surface waters and Y's for sanitary sewer connections to each residential lot, capable of caring for sanitary sewage and surface waters of the whole area of the district. The underground conduits range from 12 to 54 inches in diameter.

The bonds have been in default since May 1, 1931, due to the suspension of the levy of instalments of the assessment for this project during the years 1932 to 1936, inclusive. All bonds are now past due and interest has been in default since May 1, 1940. On December 12, 1940, relators entered into written agreement with the drain commissioner, board of auditors, and treasurer of the county, whereby 30 per cent. of the accrued interest was cancelled and refunding bonds were to be issued. Relators surrendered their interest coupons, consented to an indorsement on their bonds of a receipt for all interest to May 1, 1940, and were paid 70 per cent. of the accrued interest. Respondent drain commissioner then sought authority for the issuance of refunding bonds and, on February 13, 1941, the Michigan public debt commission signed an order authorizing such an issue. Relators were later informed by respondents that they would neither issue such re-

funding bonds nor levy any further taxes for the payment of existing bonds. The answer of respondents avers in substance that the refunding agreement, having been executed without the authority or approval of the board of supervisors, is void and of no force and effect, and that, because of the holding of this court in *Village of Oak Park* v. *Van Wagoner,* 271 Mich. 450, decided May 17, 1935, the bonds held by relators are void.

In the 12 briefs that have been filed in this cause by the parties and various *amici curiae,* to whom leave was granted, it is conceded that decision in this case affects not only the possibility of payment of the defaulted bonds of this issue but many millions of other outstanding drain bonds.

The issues presented may be summarized as follows:

1. Is the decision in *Village of Oak Park* v. *Van Wagoner, supra,* either *res judicata* or *stare decisis?*

2. Are respondents estopped by the recitals in the bonds?

3. May the validity of the drainage proceedings be attacked in a collateral suit?

4. Is Royal Oak No. 7 storm sewer drain a sewer or a drain?

5. Is mandamus the appropriate remedy?

Litigation regarding the validity of drainage projects has been determined by this court in various cases, among which are the following: *Clinton* v. *Spencer,* 250 Mich. 135; *Warren Township* v. *Engelbrecht,* 251 Mich. 608; *Kinner* v. *Spencer,* 257 Mich. 142; *Township of Lake* v. *Millar,* 257 Mich. 135; *Hankinson* v. *Deake,* 265 Mich. 1; *Village of Clawson* v. *Van Wagoner,* 268 Mich. 148; *Village of Oak Park* v. *Van Wagoner, supra; Kennedy* v. *Dingman,* 272 Mich. 24; *Meyering Land Co.* v. *Spencer,* 273 Mich. 703; *Detroit Fire & Marine Ins. Co.* v. *Oakland*

*County,* 284 Mich. 130; *Detroit Trust Co.* v. *Dingman,* 291 Mich. 170.

In none of the above cases were bondholders actual parties, although respondents argue that bondholders were represented by the drain commissioner. Holders of bonds issued on projects covered by some of the foregoing cases have litigated their claims in the Federal courts. The most recent Federal decision is *Bloomfield Village Drain District* v. *Keefe* (C. C. A.), 119 Fed. (2d) 157. Other Federal cases are an unreported one before Judge Raymond in the Western District of Michigan and *Royal Oak Drain District, Oakland County, Mich.* v. *Keefe* (C. C. A.), 87 Fed. (2d) 786.

No useful purpose would be served in reviewing the cited cases, each of which has been reexamined as to its applicability to the issues presented. Careful consideration requires the conclusion that decision in the instant case is governed by the reasoning in *Village of Oak Park* v. *Van Wagoner, supra.* Although five members of the court concurred specially in the opinion in that case, nevertheless the court was unanimous in holding that the Royal Oak No. 7 project was a sewer and not a drain; that the defendant drain commissioner was wholly without jurisdiction in the premises, and that therefore the entire proceedings were void and subject to collateral attack. In arriving at this conclusion, the court unanimously concurred in the statement that, "The acts of the drain commissioner were without warrant in law, and any tax levied and collected as a result thereof would constitute the taking of property without due process of law." We held unanimously that all assessments levied against the village should be cancelled and set aside and permanently restrained the drain commissioner from collecting, or attempting to collect, the same or any portion thereof.

The project was designated "Royal Oak No. 7 Storm *Sewer* Drain," and the bonds bore the heading, "Royal Oak No. 7 Storm *Sewer* Drain District Bond." It was recited in the bonds "that all acts, conditions and things required to be done, precedent to and in the issuance of this bond in order to make it a binding obligation of the Royal Oak No. 7 storm *sewer* drain district have been done  *  *  *  and for the prompt payment hereof  *  *  *  the full faith, credit and resources of said drain district are hereby irrevocably pledged." The underground conduits are all of the same size and character as when they were laid and are serving the same purpose for which they were laid. If the levy of a tax in 1935 "would constitute the taking of property without due process of law," the levying of a tax now would also constitute the taking of property without due process of law.

We do not say that the *Village of Oak Park Case, supra,* is *res judicata* of the rights of these relator bondholders; nor do we hold that they had their day in court through representation by the drain commissioner who was the defendant in that action. We do say, however, that the rule of *stare decisis* should be applied even though equitable considerations might prompt a different result. *Detroit Trust Co.* v. *Detroit City Service Co.,* 262 Mich. 14, 35. See, also, *People* v. *Droste,* 160 Mich. 66, 75, and *Colborne* v. *Detroit United Railway,* 177 Mich. 139, 142. Since we held in 1935 that it was illegal to levy and collect any tax assessed as a result of this project, under the doctrine of *stare decisis* we must hold now that it is illegal to levy and collect a tax to pay outstanding bonds issued incident to the same project.

It is urged that respondents are estopped by the recitals in the bonds to deny their validity. Generally speaking, a municipal corporation cannot be estopped by the unauthorized and illegal acts of its

officers. Certainly the board of supervisors of Oakland county cannot be estopped by the drain commissioner of that county because he had no legal authority whatever to speak for them and the counter signature of the county clerk was merely a ministerial act.

Is the drain district estopped by the recitals of the drain commissioner? Among the authorities cited in support of relators' contention, the case of *Thompson* v. *Village of Mecosta,* 127 Mich. 522, is typical. In that case the village of Mecosta had authority to issue public improvement bonds and, so far as the bonds issued were concerned, they were perfectly good on their face. There was nothing to challenge the attention of the purchaser, such as the title of the proceedings and the heading of the bonds in the instant case. They were designated only as public improvement bonds of the village. The bonds were, however, "delivered to the Hutchinson Manufacturing Company of Jackson, Mich., as a bonus or aid to parties erecting a gristmill," a purpose for which the village wholly lacked authority to issue bonds, namely, a private improvement. The bonds upon their face "unquestionably carried a false pretense." This court held that—"a bona fide purchaser for value had a right to rely upon the statement of the board, appearing in the bond, that it was issued to borrow money under this act, for lawful purposes; *i.e.,* public improvements." Citing authorities.

Judgment, however, for plaintiff was reversed and a new trial ordered because of the absence of proof of bona fides.

In the instant case there is no showing, and can be no showing, of false pretense. Each obligation now in question bore the title, "Royal Oak No. 7 Storm *Sewer* Drain District Bond." The drain commissioner had no authority to build a *sewer* drain. He

was wholly without jurisdiction and his void acts cannot estop the drain district, even though it can be argued that the taxpayers of the drain district have profited by his unauthorized acts.

Since relators do not present a case warranting the relief asked for, we need not pass upon the propriety of mandamus as a remedy in this action.

The writ of mandamus is denied. A public question being involved, no costs will be allowed.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred.

BOYLES, J. (*concurring*). I concur on the ground that no facts are adduced in this case outside of those before us in *Village of Oak Park* v. *Van Wagoner*, 271 Mich. 450. This record shows that every step in the proceeding resulting in the issuance of these bonds, from the original application for laying out the drainage district to issuing the bonds thereon, refers to a *storm sewer drain*. At the oral argument and in numerous briefs filed by *amici curiae*, it is urged that the validity of at least 11 other bond issues involving several millions of dollars depends upon the decision in this case. The validity of such issues depends upon the facts and circumstances under which they were issued. See *Royal Oak Drain District, Oakland County, Mich.,* v. *Keefe* (C. C. A. [6th Circuit], January 14, 1937), 87 Fed. (2d) 786. We repeat that the controlling legal distinction between sewers and drains is the primary purpose of the structure which determines its character regardless of what may be purely incidental purposes. *Kennedy* v. *Dingman*, 272 Mich. 24. The Federal courts likewise recognize the Michigan rule, here repeated, that the drain district or municipality is not estopped from denying validity of a bond issue

on the ground of total lack of jurisdiction. *Bloomfield Village Drain District* v. *Keefe,* and four other cases (C. C. A. [6th Circuit], March 14, 1941), 119 Fed. (2d) 157.

CHANDLER, C. J., and NORTH, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred with BOYLES, J.

BUSHNELL, J. I agree with the amplification as stated by Mr. Justice BOYLES.