## O'HARA v. OAKLAND COUNTY et al.
### No. 9397.

Circuit Court of Appeals, Sixth Circuit.

June 4, 1943.

John P. O'Hara, of Detroit, Mich., for appellant.

No counsel appearing for appellee.

Harry J. Merritt, of Pontiac, Mich., counsel of record.

Before HICKS, SIMONS, and McALLISTER, Circuit Judges.

HICKS, Circuit Judge.

On September 2, 1932, Oakland Hills Country Club, herein called Oakland Hills, a property owner and taxpayer, represented by petitioner-appellant as attorney, herein called petitioner, filed its bill in the Circuit Court of Oakland County, Michigan, in which it sought to have the proceedings leading to the establishment of Bloomfield Village Drain and Bloomfield Storm Sewer Drain No. 1 declared illegal and void. That was one of a number of suits commenced for a similar purpose. The Oakland Hills suit was tried as a test case and a decree was entered upholding the validity of the proceedings attacked and dismissing the bill. Oakland Hills, still represented by petitioner, appealed to the Supreme Court of Michigan, where the decree of the Circuit Court was vacated and a decree was entered holding the drainage proceedings void ab initio. The Drain Commissioner, as well as Oakland County itself, were parties defendant to that suit and were represented by the attorney for the County with attorneys for bondholders who had bought drainage bonds also acting as counsel. Oakland County was vitally interested because the drainage assessments upon property when collected were to be paid into the Treasury of the County and because it was secondarily liable for such assessments as could not be collected from the districts.

On August 23, 1933, holders of bonds of certain drainage districts brought a suit, which was essentially a class suit, in the United States District Court wherein they sought an adjudication to the effect that their bonds were valid and that the special tax assessments to pay them were enforceable. They also sought to invalidate the above-mentioned decree of the state Supreme Court.

An appearance was entered for Oakland County, certain of its officials and its Drain Commissioners. Oakland Hills, which had been a party plaintiff in the first suit, was made a party defendant and defended for all property holders in the drainage districts as a class and was represented by petitioner as counsel. The District Court sustained this bill and defendants appealed to the Circuit Court of Appeals, where the case was, in the opinion, consolidated with similar cases from another drain district. These consolidated cases appeared in this court under the style of Bloomfield Village Drain Dist. et al. v. Keefe et al., and our opinion is reported in 119 F.2d at page 157. We held that we were bound by the decree of the Michigan Supreme Court and dismissed the bill. After a petition for rehearing was denied the bondholders committee applied to the Supreme Court of the United States for a writ of certiorari, which was denied, 314 U.S. 649, 62 S.Ct. 95, 86 L.Ed. 521. Thereafter, the committee applied for a rehearing, which was passed by the Supreme Court until the determination by the Supreme Court of Michigan of whether the Michigan drainage law was as interpreted by us. The Michigan Supreme Court again held that the drainage bonds were void and the Supreme Court of the United States then denied the pending writ of certiorari.

Thus, the litigation was terminated, and the drainage bonds were declared void. In the meantime a fund of $133,030.56, representing the payment of drainage assessments, had accumulated. This fund is now in the custody of the District Court from which the appeal to us was taken.

Appellant, O'Hara, filed a petition in the District Court in which he set forth that during the progress of the litigation, which continued for nine years, he not only represented Oakland Hills but Oakland County as well; that while the County was represented by its counsel, almost the entire responsibility for the conduct of the litigation fell upon him and upon his law firm, which has since been dissolved. Appellant asked the court to allow him fair and equi-

table compensation for his services out of the fund on hand. Oakland County and its officials answered the petition, admitted the existence of the fund in the custody of the court, admitted that the efforts of petitioner had contributed to its preservation as well as the cancellation of liability against the drainage districts, and of the secondary liability against the County; admitted that petitioner had complete charge of the litigation not only for his own client, Oakland Hills, but for Oakland County as well, although the County was represented by counsel. They admitted that the results obtained were in large part due to the work and services performed by petitioner and his firm and they specifically left to the discretion of the court the question whether appellant should be compensated from the fund. Neither Oakland County nor its officials took any further active part in these proceedings.

■ The court appointed a Special Master to take testimony upon the petition and make findings of law and fact. The Master made an exhaustive report. He set forth the complexity of the issues, not only in the case before us [119 F.2d 157] but in related cases. He found that in all this litigation the major burden of the effort to have the drainage bonds and assessments avoided fell upon petitioner. He said: "During the trial of this case, he arranged for the testimony of practically all the expert and other witnesses testifying for defendants, and conducted most of the examination of said witnesses and cross-examination of plaintiff's witnesses on behalf of defendants. During most of the trial, an attorney for another property owner defendant participated in the case, but he was much less active than petitioner and his firm later withdrew from active participation. In addition to conducting the trial, Mr. O'Hara filed elaborate briefs and undertook the main argument for defendants, both before the Master and the District Court. He (with his associates in his firm) did practically all the work for defendants in preparing the 448-page record on appeal and wrote the great bulk of the brief of more than one hundred printed pages filed with the Court of Appeals. He handled the oral argument for the defendants before the Circuit Court of Appeals, and wrote and filed briefs in connection with a petition for rehearing filed by the bondholders, and also in connection with the petition for certiorari and rehearing thereon before the United States Supreme Court. In addition, he participated in the collateral case already mentioned of Highland Park v. Clark [300 Mich. 501, 2 N.W.2d 479], another case in Oakland County, Detroit Fire & Marine Insurance Company v. County of Oakland [284 Mich. 130, 278 N.W. 791], which had a direct bearing upon this case."

The Master recommended an allowance to petitioner for his services of a fee of $30,000 to be paid out of the fund. The report was unexcepted to.

The District Court entertained the view that it was unauthorized to compensate appellant out of the fund and dismissed the petition. It is obvious that the court had the power to make an allowance, for the fund was under its complete control, and Oakland County, which was protected in its ownership thereof by the Michigan Statute of Limitations of thirty days [see Norton Township v. Cockerill, 265 Mich. 405, 251 N.W. 543], was before the court.

We are not called upon to pass upon the issue from the viewpoint of the strict legal rights of the parties. We are concerned with a principle of equity jurisprudence. Appellant was largely instrumental in protecting and preserving a fund, of which in the end, Oakland County became the owner. The County concedes that it was the beneficiary of his labor and services not only in making the fund available to it, but in the cancellation of future assessments on properties in the drainage districts. It makes no objection to a reasonable allowance to petitioner. The equitable rule is stated in Buell v. Kanawha Lbr. Corp'n., D.C., 201 F. 762, 769, as follows: "In America no distinction as between solicitors and barristers existing, the doctrine has been extended so as to include all the fees and expenses reasonably due by the successful litigant to his counsel, and the rule is established that where one goes into a court of equity, and takes the risk of litigation on himself, and successfully creates or preserves or protects a fund to a share in which others are entitled, those others will not be allowed to lie back and share the results of these successful labors without contributing their due share, and a court of equity by an equitable extension of the English principle has required the payment out of the fund (before distribution) of the reasonable costs and expenses, including the reasonable counsel fees of the complainant whose diligence created or

preserved the fund for distribution." See also Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Trustees v. Greenough, 105 U.S. 527, 532, 26 L.Ed. 1157; Wallace v. Fiske, 8 Cir., 80 F.2d 897, 903.

The allowance does not depend upon whether petitioner's client, Oakland Hills, and Oakland County were aligned in interest upon the same or opposite sides of the litigation, or upon whether petitioner's application was made by him directly to the court or through his client, or whether the litigation was by classes or otherwise; or in what particular manner the fund was created. These were all mere formalities. See Sprague v. Ticonic Bank, supra (307 U.S. at page 167); Colley v. Wolcott, 8 Cir., 187 F. 595.

We think that petitioner is entitled to the confirmation of the Special Master's report and to a decree allowing him a fee of $30,000 to be paid out of the fund of $133,030.56 now in the custody of the court and to this end the judgment appealed from is reversed and the case remanded with directions to the District Court to proceed in accordance with this opinion.