## HOYT v. EMPIRE OIL & REFINING CO.
### No. 995.

District Court, E. D. Michigan, N. D.

Nov. 10, 1943.

Robert J. Curry, of Saginaw, Mich., for plaintiff.

Cook, Smith, Jacobs & Beake, of Detroit, Mich., in pro. per.

Edward R. Goggin, of Alma, Mich., and E. Cyril Bevan, of Detroit, Mich., for Porter Royalty Pool, Inc.;

Gilbert W. Hand, of Bay City, Mich., and Frank H. Bacon, of Ponca City, Okl., for defendant.

TUTTLE, District Judge.

The question of the disposition of a fund of $4,581.10, in the registry of the court, in this case, is before the court upon petition by defendant for payment of said sum to it and motions for leave to intervene and to obtain payment from the fund by the Porter Royalty Pool, Incorporated, a Michigan corporation (hereinafter referred to as the "Pool"), and by the law firm of Cook, Smith, Jacobs & Beake, the attorneys for plaintiff, who claim that part of the fund is due them for their legal services. To understand the issue presented by these petitions, it is necessary to review briefly the history of this litigation.

The action in which these petitions were filed was a suit for damages to land owned by plaintiff and loss of royalties resulting from the alleged negligent oil drilling operations of defendant on said land pursuant to an oil and gas lease which provided for payment of $\frac{1}{8}$ royalty to the plaintiff of the oil produced by defendant under the lease. The defendant pleaded

746

a general denial. There was a lengthy trial before a jury which returned a verdict for $7,817 for sub-surface damages sustained by plaintiff and $275 for damages to the surface of plaintiff's land. The amount of damages to the surface is not involved in the present proceeding. The court entered a judgment in accordance with the verdict and an appeal was taken to the Circuit Court of Appeals which, on June 7, 1940, affirmed the judgment of the District Court. See Empire Oil & Refining Co. v. Hoyt, 6 Cir., 112 F.2d 356.

During the trial of the case, while the defendant was putting in its proofs, the attorneys for the parties requested a conference with the court in Chambers, which request was granted. At the conference, the attorneys stated to the court, in substance, as follows: That plaintiff, prior to the oil drilling operations upon her land, had become a party to a pooling agreement with other landowners in the vicinity, under which she assigned to the Pool ½ of her ⅛ royalty interest in the oil produced on her land (or 1/16 of the total royalty interest); that thereafter plaintiff, together with certain other parties to the Pool, had instituted litigation in the state courts to rescind the pooling agreement on the ground of fraud and illegality; that the trial court in that case had entered a decree rescinding the agreement and holding plaintiff's assignment void; and that an appeal to the Michigan Supreme Court had been taken from the said decree by the Pool. The attorneys further stated that while, in view of the said assignment to the Pool, there was an issue as to whether plaintiff was entitled in the case at bar to 1/8 or 1/16 of the sub-surface damages to her land, they desired to avoid the necessity of putting in the elaborate and lengthy proofs which would be necessary for a decision of that issue by this court (which would involve a duplication of the proofs in the case in the state court) and also that they desired to have the decision as to the extent of plaintiff's ownership in harmony in the two cases; and that they had reached an agreement, subject to approval of the court, to make the result here upon that issue dependent upon the final result in the state court action. This court stated that it would approve of such stipulation if the court understood it correctly, and in order to avoid any future disagreement as to their intent the court (still at Chambers) stated its understanding, in substance, as follows:

That a final judgment would be entered for any damages found by the jury to the entire ⅛ royalty interest; that defendant would pay into the court the full amount of such damages; and that if plaintiff were finally successful in the state court action she would be paid the full amount deposited with the clerk, but, if unsuccessful, she would be paid the full surface damages and ½ of the sub-surface damages and the other ½ of the sub-surface damages would be paid to the Pool, on the filing by the Pool of a full release to both plaintiff and defendant. Defendant's attorneys objected to the latter part of the stipulation, stating that nothing had been said between the attorneys about that contingency and that since the Pool had not sued the defendant the other ½ in that event should not be paid to it but should be paid back to the defendant. Plaintiff's counsel, however, objected to the repayment of that part of the fund to the defendant, and after further discussion between the parties it was ultimately agreed by them that in the event plaintiff was ultimately unsuccessful in the state court action the disposition of the ½ of the deposited sum not paid to her would be determined by the court, depending on "the law and facts." At this point the court, not having initiated the discussion, being uncertain as to the effect of such an agreement between counsel, and the jury being in the court room waiting to proceed, said, in substance, "I refuse to approve of any agreement between counsel which impairs or ties any strings to the judgment of this court. If this court enters a judgment from which no appeal is taken or if on appeal it is affirmed, this court will treat the judgment as valid and meaning just what it says. If it is not paid voluntarily, this court will issue a writ and the Marshal will try to collect it if requested so to do. The court leaves it for counsel to decide what proofs are offered". The record was completed. Defendant introduced no proof contesting the ⅛ royalty of plaintiff. The contest was vigorous, both as to a large part of the surface damages and all of the sub-surface damages. The verdict of the jury was substantially a victory for defendant as to surface damages and for plaintiff as to sub-surface damages.

After the mandate came down to this court from the Circuit Court of Appeals on the affirmance of the judgment in this case, defendant paid to plaintiff all of the sur-

face damages and ½ of the sub-surface damages, and paid to the clerk of this court the other ½ of the sub-surface damages amounting to $4,581.10, which was held pending decision of Hathaway v. Porter Royalty Pool, Inc., by the Supreme Court of Michigan. Thereafter, the Supreme Court of Michigan reversed the state trial court holding that the assignment by plaintiff of ½ of her interest to the Pool was valid. See 296 Mich. 90, 295 N.W. 571, 138 A.L.R. 955, and 296 Mich. 733, 299 N.W. 451, 138 A.L.R. 967. Thereafter, defendant filed its petition in this case to obtain the fund on deposit in this court, and the intervening motions and petitions of the Pool and of Cook, Smith, Jacobs and Beake were filed. The said law firm represented plaintiff throughout this action, and its claim here is against the fund for attorney's fees (on a contingent basis, based upon a written agreement with plaintiff). The right to this fee has been recognized by the plaintiff and by the Pool. Plaintiff also has consented to the payment of the fund to the Pool, after payment of said fees and reimbursement to her of a proportionate share of her out-of-pocket expenses. This division of the fund is fully shown by a written stipulation on file in the case, which is signed by plaintiff, her attorneys, and the Pool through its attorneys of record. The three parties other than defendant who are interested in the fund have agreed by said stipulation to the following division of the fund (after deduction of the government fee of $45.81): Pool, $1,792.52; Cook, Smith, Jacobs & Beake, $2,106.46; plaintiff, $636.31.

■ The issue as to whether the fund in the court's registry should be paid to the Pool, after deduction of its share of litigation expenses, or paid back to defendant has been argued at considerable length and thoroughly briefed by the parties. It is evident that the question presented is somewhat unique. When the attorneys for plaintiff and defendant presented the matter at the conference with the court during the trial of this case, the court during the first part and nearly all of the discussion supposed that counsel had reached an agreement as to the disposal of the money under all the different conditions which might arise, and accordingly indicated its approval to the proposed course of action. However, when the court attempted to state its understanding of the oral agreement, it developed that the parties were not in agreement upon the most important point involved and evidently had not even discussed it. The ultimate agreement only went so far as to provide that the plaintiff would get ½ of the sub-surface damages paid to her immediately when the judgment in this case became final, and she would get the other ½ if and when she finally prevailed in the state court litigation. If ultimately plaintiff lost to the Pool in the state court, the disposition of the other ½ was to be decided by this court, depending upon the law and facts. This court took no part in and gave no approval to that phase of the so-called agreement between counsel. The fact is they could not agree about it and did not agree about it. To say that the question "would be determined by the court depending upon the law and facts" is just a lawyer's way of saying we cannot agree and so we will fight it out in court. It is evident to this court that the parties did not intend to confer complete discretion upon this court to make this decision as an arbitrator. Nothing was said to indicate such an intention and this court never accepted any such responsibility. The lawyers evidently considered it such a remote possibility that they had not even talked about it until it was mentioned by the court in stating the court's understanding of the proposed stipulation. Then, in their hurry to get back into the court room and complete the case, they stated that the "law and facts" should control that contingency.

■ Since there was no agreement between the parties as to how this fund would be disposed of in the event the Supreme Court of Michigan decided plaintiff's action in favor of the Pool, it is necessary to consider the legal rights of the parties in the absence of an agreement. The plaintiff here sued for damages to the entire ⅛ interest in the royalties and alleged that she owned that entire interest. The plaintiff's proofs were to the effect that she owned the whole interest. Defendant submitted no evidence to controvert this fact and the case went to the jury, which found in plaintiff's favor for damages to the entire ⅛ interest. A final judgment was entered for damages to the entire ⅛ interest. Upon this showing of the record and facts, if no stipulation had been made between the parties, the defendant would have no basis for claiming any right to a refund of part of the dam-

ages recovered by plaintiff. Since the upshot of the discussion between the court and counsel was that no agreement was arrived at under the circumstances which have now arisen, this court is of the opinion that the parties are in no better or different position than if no agreement had been reached at all. Defendant was not definitely precluded by the stipulation arrived at from submitting any evidence it wished, to show the facts upon which the court should base its decision as to the disposal of the fund.

Further approaching the question from the standpoint of what would be the rights of the parties in the absence of any stipulation at all, it seems evident that with plaintiff having obtained a judgment for damages to the full $\frac{1}{8}$ interest and the Supreme Court of Michigan having decided that the Pool actually owned $\frac{1}{2}$ of said interest, the Pool could then have intervened in this case to protect its interest in $\frac{1}{2}$ of the award. Under Rule 24(a) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, one can intervene in a civil action as of right "when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof." The situation would be that the plaintiff had recovered a judgment for damages, $\frac{1}{2}$ of which equitably belonged to the Pool. If the judgment had been satisfied and plaintiff had received the full amount of it, it likewise seems clear that she would have held the $\frac{1}{2}$ of it upon a constructive trust in favor of the Pool. See Sloan v. Appalachian Electric Power Co., D.C., 27 F.Supp. 108, and Mason v. Marine Insurance Co., 6 Cir., 110 F. 452, 54 L.R.A. 700, in which cases an insurance company was permitted after judgment to intervene to protect its interest in a judgment secured by the insured, part of the rights under which had been assigned to the insurance company.

Thus, apart from any stipulation on the question, the Pool would be entitled to intervene herein to obtain $\frac{1}{2}$ of the net amount of the judgment in plaintiff's favor. As heretofore stated, since there was no stipulation on the point, the court should decide the matter just as though no stipulation at all had been entered into. Of course, the agreement did go so far as to preclude plaintiff from receiving the remaining $\frac{1}{2}$ of the judgment directly, but

plaintiff recognizes the rights of the Pool and does not seek to claim the sum for herself. Defendant claims that the plaintiff, being engaged in a bitter controversy with the Pool at the time of the stipulation, would have no interest in protecting any rights of the Pool. However, it appears that plaintiff was a stockholder of the Pool and if she lost her action against it she would still have an interest in recovering a proportionate share of the money coming to the Pool from her stock interest. This, no doubt, was the reason why plaintiff's attorneys objected to stipulating that in the event of her defeat in that litigation the money on deposit with this court be returned to defendant.

As to the requests of plaintiff and her law firm for payment out of the fund, these do not constitute independent claims to the fund but rather a charge against the Pool of a proportionate share of the litigation expenses involved in its recovery of the fund, and consequently these claims should be recognized. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; O'Hara v. Oakland County, 6 Cir., 136 F.2d 152.

While the court bases its decision upon the legal principles as above considered, it may be added that practical and equitable considerations point in the same direction. If sub-surface damage was caused to the well by negligent drilling operations of defendant, there was just as much damage to the Pool's $\frac{1}{2}$ interest in the royalties reserved as there was to plaintiff's $\frac{1}{2}$ interest. As stated, the plaintiff has an interest in the Pool and is naturally interested in seeing the Pool recover for such damages. The defendant's interest in entering into a stipulation was, first, to avoid the necessity of putting in elaborate proofs in the case at bar, and, second, to avoid a possible double liability for the same wrong. This holding accomplishes both of those things for the defendant. Permitting the Pool to obtain the money involves only single liability on the part of defendant.

An order will be entered directing the fund on deposit to be paid to the Pool after deducting government fees, paying to plaintiff her share of out-of-pocket expenses advanced in the lawsuit, and to plaintiff's attorneys fees to which they are entitled, in accordance with the stipulation filed August 6, 1943. The plaintiff, her attorneys, and the Pool will be required

749

to join in and file a satisfaction of judgment at the time of obtaining the fund, and in addition thereto the Pool will be required to file in this case and deliver to the defendant duplicate originals of a receipt in full and a release of all claims of damages from the operation of defendant on the property in litigation.