## MOORE v. CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—PRESENTATION OF CLAIMS—WAIVER OF VERIFICATION.

> A municipality waives the requirement that a claim presented to it be verified (1 Comp. Laws, § 2754, and Detroit city charter, § 134), by considering an unverified bill for legal services and rejecting it without raising that objection.

2. SAME—CONTRACTS—AUTHORITY OF VILLAGE PRESIDENT.

> The president of a village has no authority, in view of the provisions of 1 Comp. Laws, § 2752, to contract on behalf of the village to pay an attorney's retainer to act as village counsel.

3. SAME—ATTORNEY AND CLIENT—WORK, LABOR AND SERVICES— QUANTUM MERUIT.

> By a resolution of the village council appointing a firm of attorneys as village attorneys, the municipality bound itself to compensate them not only for services rendered in and out of court in litigated cases, but for all services rendered for the village with its knowledge and consent, under the appointment.

4. SAME—ATTORNEY AND CLIENT—RETAINER.

It was error to permit the jury to award to the attorneys a sum as retainer in addition to the full and fair value of the services rendered.

Error to Wayne; Donovan, J. Submitted January 9, 1911. (Docket No. 58.) Decided February 1, 1911.

Assumpsit by George William Moore and George Whitney Moore, copartners doing business as Moore & Moore, against the city of Detroit and the village of Grosse Pointe Park, for legal advice and services. Judgment for plaintiffs. Defendants bring error. Reversed.

*William E. Henze* and *Richard I. Lawson* (*P. J. M. Hally*, of counsel), for appellants.

*T. A. E. Weadock* and *Moore & Moore*, for appellees.

BROOKE, J. Plaintiffs, who are in partnership in the practice of the law in the city of Detroit, were made attorneys for the village of Fairview on May 7, 1906, by virtue of the following resolution:

"Resolved that Moore & Moore be and they are hereby elected attorneys of Fairview. Resolution supported by Trustee Rider. Ayes—Trustees Garsky, Royal and Rider. Nays—Andres, Pearson and Rice. The vote being a tie, the president voted 'aye.'"

Plaintiffs entered upon the discharge of their duties as such attorneys, and continued to perform the same until October 24, 1907, when by Act No. 1, Local Acts Extra Session 1907, a portion of the village of Fairview was annexed to the city of Detroit. By the terms of that act, the debts and obligations of the village of Fairview were made obligations of the city of Detroit and the village of Grosse Pointe Park, to be borne proportionally.

Plaintiffs presented their bills for services amounting to $5,818.65 to both municipalities. The claims as presented to the defendants were not verified as requried by law. See 1 Comp. Laws, § 2754, and Detroit city charter, § 134.

The record shows, however, that both municipalities considered the claim; that the defendant the city of Detroit heard testimony in the matter, and that payment thereof was refused by both defendants. Apparently no objection was raised to the claim for this irregularity before the council committee. We think it has been waived. *Griswold* v. *City of Ludington,* 116 Mich. 401 (74 N. W. 663); *Wright* v. *Village of Portland,* 118 Mich. 23 (76 N. W. 141); *Foster* v. *Village of Bellaire,* 127 Mich. 13 (86 N. W. 383).

Plaintiff George William Moore was permitted to testify, apparently without objection, as follows:

" I was employed by the president, Mr. Keith, to render service for the village before any of the services in this bill were rendered. He wanted to know what my charges would be, and I told him my charges were generally based on $50 a day, whether in court or in the office. It was not in writing. The arrangement was for the litigated cases. When we had to arrange and prepare to try them, we were to be paid $50 a day for the services for the investigation, examination, and trial of the case. And the work outside of the litigation would be $2,500 a year, and that sum that would be for consultation and all that sort of things growing out of the village organization and State work. * * * I have made no charge in my bill of particulars for specific services which would be covered by the retainer.

"*Mr. Henze:* I object to that. Let him state what he did, and then we can find out what he ought to recover. Perhaps your honor did not understand the question. Let him state what services he rendered, and then we can tell whether covered by the retainer or not.

"*The Court:* It seems to me where he has an oral contract he would be the one to put his construction upon that. Until we hear from the other side, the jury will not know.

"*Mr. Weadock:* The jury will decide just the facts, and your honor will charge, and I want to show just which were rendered and which were not.

"*The Court:* If we had a writing, we could go by that, but we have not, and I think we will have to let him

swear what came under the retainer and the extra. You may have an exception."

Plaintiff thereupon testified to the value of the services in the litigated matters. On re-direct examination he testified as follows:

"*Q.* I wish you would explain to the jury a few of these terms that have been used here, viz., a ' retainer '—what does a retainer mean ?

"*Mr. Lawson:* May it please your honor, our position is that Mr. Keith, the president of the village, had no power to enter into a contract with Mr. Moore with reference to a retainer, and therefore we claim that, there being no power to make a contract, all Mr. Moore could claim for would be the value of his services.

"*Mr. Weadock:* I do not concede that for a moment that he has not the power to retain, because that is the only thing that the president of a corporation or municipality or otherwise has a right to employ counsel.

"*The Court:* I think we have a right to take the testimony.

"*A.* The retainer in this particular case?

"*Q.* Speaking of it generally.

"*A.* The general understanding of a retainer in the legal form now is that it secures to the client the absolute services of the attorney when those services are called for, the client to pay for the services rendered in addition to the retainer.

"*Q.* When you have the annual retainer to cover certain items ?

"*A.* In this case the retainer covered all the ordinary work of the village.

"*Q.* In such a case as that, is any charge made upon the books for the items covered in the retainer ?

"*A.* No, sir; so far as possible, I made my bill out for the services actually rendered. Of course, there were quite a number of cases where they would say to me, 'Here is a case pending,' and I would go to work upon the matter for a long time before the suit was actually started, but we knew that the case was coming and I did not delay, but I went right ahead.   *   *   *

"*Q.* Including the idea of a retainer and considering only the services that you did, that is in question in this bill, from first to last, the time it took, the importance of the question and everything in regard to it, state whether

in your opinion the amount you have charged is a reasonable one, excluding the idea of a contract.

"*A.* It was a very reasonable charge."

During the examination of Seneca Traver, a witness for defendant, the following colloquy occurred:

"*Q.* Covering a period of one year, what would you state such services to be worth? (Objected to. There is no testimony whatever that this was not covered by a special contract as testified to by Mr. Moore, and, if there was a special contract, then somebody else's test is immaterial until some testimony is offered by the defendant that there was not a special contract. This is immaterial.)

"*Mr. Henze:* We deny that there was a special contract.

"*The Court:* You are simply standing up and denying it and offering no evidence.

"*Mr. Henze:* They have to prove a contract, and they have only proved it that the man who was president of the village and no contract shall be made or any expenses incurred as the law says, except upon the two-thirds vote of the board of trustees.

"*The Court:* You have not introduced this yet.

"*Mr. Henze:* It is for them to prove that."

The value of the plaintiff's services, outside those covered by the retainer, as testified to by Mr. Moore, was something over $2,000. The difference between this sum and the amount of the judgment is practically the amount of the retainer during the period of employment. We think there can be no doubt that in making up their verdict the jury allowed to plaintiffs a sum equivalent to the retainer.

Defendant requested the court to charge:

"(1) It appears from the testimony of one of the plaintiffs, George William Moore, that he made a verbal agreement with Evelyn Keith, who was the president of the village of Fairview, to the effect that the village of Fairview would pay the plaintiffs the sum of $2,500 as an annual retainer. I charge you that it was beyond the power of the president of the village of Fairview to enter into such a

verbal agreement or arrangement with the plaintiffs. The only way in which such a contract could be legally made on behalf of the village of Fairview would be by a resolution of the village council, which would incorporate the provisions of such a contract and be passed by the required majority of the members of the village council.

"(2) I charge you that upon plaintiffs' own theory they are not entitled to the retainer or any part thereof, because there is no power under the village charter delegated to the president of the village to make such an arrangement or contract that would be binding legally upon the village.

"(3) I further charge you that persons dealing with a municipality through its officers must at their peril take notice of the authority of the particular officer to bind the corporation. If this act is beyond the limit of his authority, the municipality is not bound.

"(4) As bearing upon the powers and limitations of the president of the village of Fairview, the law declares, *i. e.*:

"'The president shall by and with the consent of the council, appoint a village marshall, street commissioner and such other officers as shall be provided for by resolution or ordinance of the council; and the council may from time to time provide by ordinance or resolution for the appointment of such other officers whose election or appointment is not herein especially provided for, as they shall deem necessary for the execution of the powers granted by this act; and the powers and duties of such officers shall be prescribed by the council; provided that the marshal may also be appointed as street commissioner.'

"This provision of the statute limits the powers of the president of the village. I therefore charge you that the contract or arrangement made with the plaintiffs by the president of the village was beyond the power of the president, and therefore no recovery can be had under such alleged contract or arrangement.

"(5) I charge you that the plaintiffs are entitled to such reasonable compensation as they have satisfied you their services were worth for the different matters they had in charge, and no more."

The first of these requests were given with this addition:

"But they did pass such a resolution, only they omitted

(this is qualified) to make the price. They admit the hiring, only they omitted to state the price."

The second was refused. The third was given. The fourth was given and modified. The fifth was given.

We think it very clear that the contract between the plaintiffs and the president of the village as to the retainer was absolutely void. The president had no power to bind the village by any such contract. See 1 Comp. Laws, § 2752; *Tennant* v. *Crocker*, 85 Mich. 328 (48 N. W. 577). The village, by its resolution of appointment (which was silent as to compensation), bound itself to reasonably compensate plaintiffs, not only for services rendered in and out of court in litigated cases, but for all services rendered for the village with its knowledge and consent, under the appointment. The jury should have been instructed to disregard all testimony as to a retainer, and to award plaintiffs fair and full compensation for all services performed. The error into which the jury may have fallen is apparent, when we consider the definition of the word "retainer" given by Mr. Moore. He testified:

" The general understanding of a retainer in the legal form now is that it secures for the client the absolute services of the attorney when those services are called for, the client to pay for the services in addition to the retainer."

Other errors assigned require no discussion.

The judgment is reversed and a new trial ordered.

MOORE, BLAIR, MCALVAY, and STONE, JJ., concurred.