BAKER *v.* CITY OF KALAMAZOO.

1. MUNICIPAL CORPORATIONS—POWER TO CONTRACT—CHARTER.
   Power to make contracts on behalf of home-rule city, granted by charter to city commission, is not modified by charter provision stating city manager should ''have general supervision over all public improvements, works and undertakings, except as otherwise provided'' therein (Kalamazoo City Charter, §§ 43, 105, 106).

2. SAME—CONTRACTS—AUTHORITY OF OFFICERS—NOTICE.
   Persons, contracting with municipality through its officers, are bound to ascertain the limits of their authority to bind the municipality, it not being bound by acts beyond their authority.

3. SAME—EXPRESS CONTRACT—EXCAVATION WORK—RATIFICATION.
  Promise of city manager and other officers not authorized by charter did not alone create express contract with city for payment of additional compensation to plaintiffs for excavation work for reservoir, although city commission could have ratified the attempted contract.

4. SAME—CONTRACTS—RATIFICATION.
  Ratification of contract by municipality is possible only where the duly authorized officers have full knowledge of the facts.

5. SAME—CONTRACTS—RATIFICATION—EVIDENCE.
  Alleged contract with municipality to pay plaintiffs additional compensation for proceeding with excavation work *held,* not ratified where the only action of city commission authorized to make such contracts with reference thereto was its refusal to pay for same.

6. SAME—IMPLIED CONTRACTS—INTRA VIRES—RETENTION OF BENEFITS.
  Municipality may become liable on implied contract in absence of valid express contract for extra services performed upon a public improvement under a general contract, where the subject-matter of the implied contract is *intra vires* and the benefits are accepted by the contract-making body of the municipality.

7. SAME—IMPLIED CONTRACTS—RATIFICATION.
  Recovery by subcontractors may not be had from municipality on *intra vires* contract on implied contract theory because unauthorized officers accepted benefits, where record does not show contract-making commission knew subcontractors were blasting in reliance upon promise of additional compensation rather than pursuant to original contract containing clause that contractor had examined ground as to quality and quantity of material to be excavated so as to put commission under duty to deny liability during progress of the work.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted June 13, 1934. (Docket No. 84, Calendar No. 37,888.) Decided October 1, 1934.

Assumpsit by John Baker and Amos G. Baker, a copartnership, doing business as John Baker &

Son, against City of Kalamazoo, a municipal corporation, for sums allegedly due on a construction contract. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Howard & Howard,* for plaintiffs.

*Lynn B. Mason,* for defendant.

EDWARD M. SHARPE, J. The city of Kalamazoo, which operates under the commission-manager form of government, in 1932 let a contract for the construction of a water reservoir to H. G. Christman-Burke Company of Detroit, as general contractors. This firm let the excavation work to John Dehner, Inc., of Fort Wayne, Indiana, who in turn let it to plaintiffs.

The general contract with Christman-Burke Company contained the following clauses:

"Nothing contained in the contract document shall create any contractual relation between any subcontractor and the purchaser (defendant city).

"The engineer shall have general supervision of the work as the agent of the purchaser. He shall have authority to direct the program of construction in so far as the proper execution of the contract is affected and to the extent that the forces of labor may be increased or decreased by his order to insure the execution of the contract in the time and in the manner prescribed.

"The engineer shall, within a reasonable time after presentation, make decisions in writing on claims arising between the principles (principals) of the contract and shall make interpretations of the plans and specifications. Such decisions and interpretations shall be regarded as final. In case of disagreement on decisions recourse may be had to arbitration as hereinafter provided.

"Additional work shall be done as ordered in writing by the engineer, which order shall state the location, character and amount of extra work. All such work shall be executed under the conditions of the original contract and subject to the same inspection and tests as though therein included.

"Additional, omitted, or changed work on which no unit price is provided shall be known as unclassified work.

"It is understood and agreed that the contractor has, by careful examination, satisfied himself as to the nature and location of the work, the conformation of the ground, the character, quality and quantity of the materials to be encountered, the character of the equipment and facilities needed preliminary to and during the prosecution of the work, the general local conditions, and all other matters which can in any way affect the work under this contract. No verbal agreement or conversation with any officer, agent or employee of the purchaser, either before or after the execution of this contract, shall affect or modify any of the terms or obligations herein contained."

Both the general and subcontracts were for lump sum amounts and referred to "earth excavation." During the progress of the work, plaintiffs struck rock or natural cement and refused to go ahead with the work because of the additional expense involved by the necessity of blasting out the rock with dynamite. The city was anxious to complete the reservoir in order to care for the summer demands for water. A conference was had between plaintiffs, the engineers on the job, the superintendent of the department of public utilities, and the city manager. As a result of this conference, the plaintiffs were given to understand that if they went ahead and finished the work they would be paid additional compensation.

The supervising engineer kept a record of the additional expense and recommended to the city that it be paid. The general contractor and John Dehner, Inc., waived any claim for compensation for the additional excavation work. The city refused to pay the bill and plaintiffs brought suit for the amount of their claim, contending that the city through its agents, the city manager and the superintendent of public utilities, had entered into an express contract for this work or, alternatively, that the city was liable on an implied contract for extra labor performed and expenses incurred. The defendant contends that under its form of government the city commission has the sole power to make contracts on behalf of the city; that this limitation of contracting power of the city arises from the following sections of the city charter:

"Sec. 105. Whenever it becomes desirable for the city to enter into a contract with a second party for any purpose whatever, such instrument shall be drawn or approved as to form by the city attorney, and certified to by the city auditor as to sufficiency of funds. The letting and making of such contracts is hereby vested in the city commission.

"Sec. 106. When it becomes necessary in the prosecution of any work or improvement done under contract to make alterations or modifications in such contract, such alterations or modifications shall be made only upon resolution of the city commission. No such order shall be effective until the price to be paid for the material and work, or both, under the altered or modified contract shall have been agreed upon in writing and signed by the contractor and the city manager upon authority of the city commission."

Defendant further contends that plaintiffs have no rights under the general contract and that there can be no recovery on an implied contract.

After a jury verdict for plaintiffs, the trial judge entered a judgment *non obstante veredicto* of no cause of action, from which plaintiffs appeal.

Plaintiffs, being subcontractors, were not parties to the general contract but were expressly excluded therefrom and can have no rights thereunder.

Under the provisions of the city charter above quoted, only the city commission has the power to make contracts. Nor is this power modified under section 43 of the city charter, which states that the city manager shall "have general supervision over all public improvements, works and undertakings, except as otherwise provided in this charter."

Persons contracting with a municipality through its council, board, commission, or officers, are bound to ascertain whether such bodies, officers or agents have power to act, and to take notice of the limits of their authority. Or as it was expressed in *Mc-Brian v. City of Grand Rapids,* 56 Mich. 95, 108, 109:

"But the law holds those dealing with a municipal corporation to a knowledge of the extent of the authority conferred, and of the mode of its exercise, and of all illegalities committed by its agents in not pursuing the authority in the manner pointed out, and visits upon them the consequences of violating the law by refusing to enforce such contract at their instance."

The same principle was applied in *Rens v. City of Grand Rapids,* 73 Mich. 237, 247, stating:

"Persons dealing with a municipal corporation through its officers must at their peril take notice of the authority of the particular officer to bind the corporation. If his act is beyond the limits of his authority, the municipality is not bound."

Accord, *Schneider v. City of Ann Arbor,* 195 Mich. 599.

The promise of the city manager or other officers did not of itself create an express contract with the city. The services were such that the city commission could have ratified the attempted contract of its officers, but ratification is possible only where there is full knowledge of the facts. The instant case is lacking in any of the elements of ratification. The refusal of the commission to pay plaintiffs' bill seems to have been the only action taken by the commission and repudiates any idea of ratification.

We now proceed to the question of the right of the plaintiffs to recover on an implied contract. Although in the absence of a valid express contract for extra services performed upon a public improvement being done under a general contract, the municipality may become liable on an implied contract, prerequisites to such recovery are that the subject-matter of the implied contract be *intra vires* and that the benefits therefrom be accepted by the contract-making body of the municipality. Donnelly, Law of Public Contracts (1st Ed.), § 102.

In the instant case, it cannot be denied that the city had the right to construct the reservoir. Its actions in connection therewith were not *ultra vires*. However, our examination of the record fails to disclose any action upon the part of the city commission that amounted to an acceptance of benefits by reason of plaintiffs' services. Certainly if the individual officers of the city had no power to contract, they could have no authority to accept under an implied contract. Nor can it be said that mere silence on the part of the city commission, without a showing that they had a knowledge of all the facts, is sufficient to establish acceptance. The record is barren of any evidence that the commission knew that the plaintiffs were doing the blasting in reliance

upon the promise for additional compensation rather than under the terms of the original contract. Under such circumstances, there was no duty on the part of the commission to deny liability during the progress of the work, and consequently no unjust retention of benefits.

The instant case is distinguishable from *East Jordan Lumber Co.* v. *Village of East Jordan,* 100 Mich. 201, and *Webb* v. *Township of Wakefield,* 239 Mich. 521, cited in plaintiffs' brief. In these cases the element of ratification was controlling.

Judgment affirmed, with costs to defendant.

POTTER, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred. NELSON SHARPE, C. J., did not sit.