PARKER v TOWNSHIP OF WEST BLOOMFIELD

1. ESTOPPEL—WORDS AND PHRASES—DETRIMENTAL RELIANCE.

An estoppel arises only when a party acts to induce another to believe that certain facts exist and the other rightfully relies and acts on such a belief to his detriment if the former is allowed to deny such facts.

2. ESTOPPEL—MUNICIPAL CORPORATIONS.

The doctrine of estoppel will be applied to a municipality if, under all the circumstances, the acts of the public body have created a situation where it would be inequitable and unjust to permit it to deny what it has done or permitted to be done.

3. ESTOPPEL—MUNICIPAL CORPORATIONS—GOOD FAITH RELIANCE—
KNOWLEDGE—CHANGE IN POSITION.

A party seeking application of the doctrine of estoppel against a municipality must show a good faith reliance upon the municipality's conduct, lack of actual knowledge or lack of the means of obtaining actual knowledge of the facts in question, and a change in his position to the extent that he would incur a

REFERENCES FOR POINTS IN HEADNOTES

[1] 28 Am Jur 2d, Estoppel and Waiver §§ 1, 4, 27.
[2, 3] 28 Am Jur 2d, Estoppel and Waiver §§ 128–130.
Applicability of doctrine of estoppel against government and its governmental agencies. 1 ALR2d 338.
[4, 8] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 529, 530.
Estoppel by United States, state, or political subdivision by deed or other instrument. 23 ALR2d 1419.
[5, 6] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 502, 503, 531.
[7] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 526 et seq., 804 et seq.
[8] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 509.
[9] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 267, 333–336.
[10–12] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 266–268, 332.

substantial loss were the municipality allowed to disaffirm its previous position.

4. MUNICIPAL CORPORATIONS—ULTRA VIRES ACTS—RETAINED BENE-FITS—ESTOPPEL.

A municipality is bound by its dealings within its general powers even if that power had been exercised in an irregular fashion or in disregard of directory provisions in its charter regarding exercise of that power where the municipality retains the benefits of the allegedly illegal proceedings even though as a general rule the doctrine of estoppel is inapplicable to *ultra vires* acts.

5. MUNICIPAL CORPORATIONS—ULTRA VIRES—AUTHORITY TO ACT.

The doctrine of *ultra vires* precludes a municipal corporation from engaging in a course of conduct where it specifically lacks the authority to do so.

6. TOWNS—TOWNSHIPS—OFFICERS—AUTHORITY TO ACT—POLICE OFFI-CERS—TOWNSHIP CHARTER.

The acts of township officials in promoting a police clerk-dis-patcher to the status of police officer are *intra vires* rather than *ultra vires* where the township clearly had the authority to maintain a police department and to hire police officers and where the infirmity of the township's acts lies only in the irregular exercise of that power and in the apparent breach of its charter provisions regarding the hiring and promotion of police officers.

7. MUNICIPAL CORPORATIONS—ESTOPPEL—GOODS AND SERVICES—RE-TAINED BENEFITS.

A municipality is estopped to deny responsibility for a claim for goods and services, in particular labor, after accepting the benefits of those goods and services; the municipality cannot accept the benefits of performance and then set up a violation of its charter or procedure as a defense for refusal to pay.

8. MUNICIPAL CORPORATIONS—OFFICERS—CITY OFFICIALS—SCOPE OF AUTHORITY—NOTICE.

One who deals with a city must take notice of the city officials' authority and is bound to know whether those officials have acted legally or illegally in their dealing with him.

9. TOWNS—TOWNSHIPS—ESTOPPEL—POLICE OFFICERS—POLICE FUNC-TIONS—ORDINANCES—DISMISSAL—DETRIMENTAL RELIANCE.

A township is estopped from denying that a plaintiff is entitled to

the protections of a township ordinance regulating the dismissal of police officers where the township's agents and officers specifically used the plaintiff to perform certain nonpatrol police functions, where the plaintiff had the appearance and apparent authority of a police officer, and where the plaintiff had met the requirement of detrimental reliance, even though plaintiff's official position, clerk-dispatcher, was not a police ranking.

10. OFFICERS—WRONGFUL DISCHARGE—COMPENSATION—REINSTATEMENT—DUTIES.

A wrongfully removed or suspended public officer can secure and protect his claim for unpaid compensation and reinstatement even though the officer failed to perform any duties during the period of discharge or suspension.

11. OFFICERS—WRONGFUL DISCHARGE—BACK PAY—MITIGATION OF DAMAGES.

Generally, a wrongfully discharged public officer is entitled to full back pay without the doctrine of mitigation of damages having to be applied to that employee's claim.

12. TOWNS—TOWNSHIPS—TOWNSHIP EMPLOYEES—WRONGFUL DISCHARGE—ORDINANCES—BACK PAY—CIVIL SERVICE SYSTEMS.

A wrongfully discharged township employee, who is entitled to reinstatement, is not entitled to receive back pay where the applicable ordinance does not provide for back pay upon reinstatement and the township has not adopted a civil service system.

Appeal from Oakland, Robert B. Webster, J. Submitted Division 2 February 12, 1975, at Lansing. (Docket No. 19426.) Decided April 24, 1975.

Complaint by Cleta J. Parker against West Bloomfield Township for wrongful discharge from employment as a police officer. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Keeling, Bogue & Huthwaite* (by *David P. Huthwaite),* for plaintiff.

*Brennan & Bibeau, P. C.,* for defendant.

Before: ALLEN, P. J., and T. M. BURNS and R. M. MAHER, JJ.

ALLEN, P. J. Plaintiff has appealed from the January 23, 1974 judgment finding no cause of action in a suit for wrongful discharge. In its bench opinion of January 3, 1974, the trial court found that plaintiff failed to prove that she was a police officer of the West Bloomfield Police Department at the time of her dismissal in June of 1971, and that she was therefore not entitled to a police board hearing before being dismissed. The trial court further found that even if plaintiff were a police officer, her employment was *ultra vires* and therefore she was not entitled to reinstatement or back wages.

This case presents the dual question of whether or not plaintiff was a police officer and, if so, whether or not her employment in violation of defendant's ordinance governing hiring precludes reinstatement or payment of back wages. An extended recitation of the facts involved is necessary to establish the basis for our decision.

In response to a newspaper advertisement, plaintiff applied for a job and was hired by defendant as a clerk-dispatcher in October of 1967. Her duties included typing, record keeping, and receiving incoming phone calls and dispatching police officers in response to those calls. At the time she began, there were no other clerk-dispatchers with defendant's police department, and previous to her assuming those duties, a police officer or perhaps even the chief of police performed the function as clerk-dispatcher.

In February of 1968, former police chief Melvin Will gave plaintiff a police identification card. The card said that it had been issued to a "duly ap-

pointed police officer", and that the defendant-township certified that plaintiff was a member of the West Bloomfield Police Department and was vested with the authority of a police officer. This card was signed by John Doherty, the township supervisor and commissioner of the police and fire departments. At trial, plaintiff testified that she felt she became a police officer in February of 1968 when Chief Will issued her the identification card and increased her duties. In 1971, plaintiff was issued a new, color identification card, which contained the same recitation as to plaintiff's position with defendant. It was this card that Commissioner Doherty took from plaintiff on June 4, 1971.

In 1968, two other clerk-dispatchers were hired by defendant, and in 1968, Chief Will obtained a weapons permit for plaintiff. A concealed pistol license was issued plaintiff on March 5, 1968, although apparently a peace officer is exempt from the requirement of having to obtain a license to carry a concealed weapon. See MCLA 750.231; MSA 28.428 and MCLA 28.432a; MSA 28.98(1). Plaintiff subsequently purchased a Hawkster Ringer and later a .38-caliber Smith & Wesson handgun. There was also a pistol kept in her desk, although the department never specifically issued her a weapon.

In February and March of 1968, Chief Will apparently began some intensive training with plaintiff regarding her additional duties. She began to guard prisoners at this time, both male and female. She also began to transport prisoners to and from the jail to district court, to the state hospital, and once to juvenile court. During that time plaintiff handled reports and spoke to citizens, and dealt with the public as a police officer.

On April 1, 1969, plaintiff received a promotion

to the position of chief dispatcher. In September of 1969, Chief Will set forth an organization chart which showed that plaintiff was the person in charge of the business operations division. The other two divisions were the investigative division and the uniform division. While she received a pay increase when promoted to chief dispatcher, she did not receive an increase in September.

In July of 1970, the then chief of police, Tobin, sent a letter to Western Casualty Insurance Company, the workmen's compensation insurance provider for the township, and asked that plaintiff be classified as a policewoman ·for the purposes of insurance on the grounds that she, and another female officer, transported female prisoners to and from the jail and conducted personal searches of these people. The letter indicated that all other female employees had been clerical and would not be exposed to possible injury in the line of duty. Also in 1970, plaintiff began to wear a "metrostyle" badge, although it was not numbered as was the badge regularly worn by the male members of the force. She was also issued a set of handcuffs in September of 1970, and was given a *Miranda*-warning card. In February of 1971, her concealed weapons permit was renewed. Also, in May of 1971, plaintiff voted in an employee election to determine whether or not the police officers were to be represented by a local AFL-CIO union. However, her vote was challenged and apparently disqualified.

On December 8, 1970, plaintiff was sworn in as a police officer. The township clerk administered the oath, and the police commissioner and township supervisor, Mr. Doherty, was also present. However, apparently some "morale" problems arose among the male members of the force as to plain-

tiff's additional duties, including the inspection of garbage trucks, the searching of female prisoners and her general deviation from strictly clerical functions. On May 19, 1971, Doherty addressed a memorandum to Chief Tobin, which set forth plaintiff's responsibilities as basically clerical. The memorandum provided that "no police function should be performed by any of the dispatcher personnel". General Order No. 24, issued May 27, 1971, provided that plaintiff would supervise the 8 a.m. to 4 p.m. shift, and would be "directly responsible to the ranking command officer present".

On June 4, 1971, Doherty requested plaintiff to turn in her badge and identification card on the grounds that there was no need for a policewoman on the staff. He said that the male members of the police force "didn't feel there was a designation of policewoman". Although a policewoman from the state police department was hired on a temporary basis to engage in a drugs-surveillance program, and while plaintiff was that undercover agent's contact with the defendant's police department, Doherty said that plaintiff was not hired as a police officer nor had defendant intended to make plaintiff a police officer. He said that plaintiff and the other dispatchers were regarded as civilians.

Plaintiff was not hired in accordance with the provisions of West Bloomfield Township ordinance 45, which provided the specific method by which a police officer would be hired by defendant. In particular, § 2A(1) provides that the township supervisor shall fill a vacant position in the police department by basing his decision upon an application, the result of an examination and the recommendation of the police chief. Also, there was to be a physical examination, § 2E(8), which plaintiff did not take, and all applicants for a position

in the police department had to complete a written examination provided by the supervisor. Section 2H. Plaintiff took no such examination. Also, the supervisor had to submit all applications and examination results and his recommendations to the township board, "which shall then fill the vacant position in the Police Department". Section 2I. Promotions in the department were to be made by the supervisor on the basis of merit. A written examination was to be used. Section 2J. It is clear that the township board did not specifically authorize the hiring of plaintiff as a police officer, and in fact Chief Tobin testified that plaintiff was sworn in as an officer after he discovered that she had been searching and guarding prisoners. While the chief testified that he took advantage of plaintiff's swearing-in and used her to perform duties which other officers might have performed so as to free those officers for street patrol, it is clear that ordinance 45 was not followed in plaintiff's alleged promotion to police officer.

After being relieved of her badge and identification card on June 4, 1971, plaintiff requested and obtained compensatory leave for the balance of the day, obtained permission to attend a funeral in North Carolina, and was absent from work for two days pursuant to that permission. However, she failed to return to work after that leave expired, and on June 11, 1971, was notified that she had been dismissed as a clerk-dispatcher in the police department on the grounds that she had directly violated the "general office personnel policies established by the township board". Plaintiff never returned to work for defendant, and instead on June 8, 1971, through her attorney, requested a hearing on her dismissal pursuant to ordinance 45, §§ 2K-L, which provided for a police appeal board

and that no member of the police department could be removed unless written charges were filed against him and he had an opportunity to be heard. Defendant failed to reply to that request, and suit was filed August 26, 1971.

Plaintiff argues that in light of plaintiff's duties and responsibilities, and defendant's conduct, defendant is estopped from denying that plaintiff was a police officer. On the other hand, defendant argues that plaintiff was not appointed pursuant to the requirements of ordinance 45, and that while defendant might be estopped to deny that plaintiff was an officer as far as a claim of a third party was concerned, plaintiff cannot benefit personally from such estoppel.

In the course of finding that plaintiff had failed to prove that the defendant's officials had led plaintiff to believe that he would be paid for unused compensatory time at the time of his retirement, the Court in *Campbell v Troy,* 42 Mich App 534, 540; 202 NW2d 547 (1972), stated:

"An estoppel arises only when a party acts to induce another to believe that certain facts exist and the other rightfully relies and acts on such a belief to his detriment if the former is allowed to deny such facts." (Citation omitted.)

Generally, estoppel may arise pursuant to the positive acts of municipal officials which induced plaintiff to act in a certain manner, and where plaintiff relied upon the official's actions by incurring a change of position or making expenditures in reliance upon the officials' actions. 9 McQuillin, Municipal Corporations (3d ed), § 27.56, pp 755–757. The circumstances of each case will determine whether estoppel is to be applied against a local government, and:

"If under all the circumstances, the acts of the public body have created a situation where it would be inequitable and unjust to permit it to deny what it has done or permitted to be done, the doctrine of estoppel will be applied to the municipality." 2 Antieau, Municipal Corporation Law, § 16A.01, p 16A-6.

One adverse to the municipality and seeking application of the doctrine of estoppel must show a good faith reliance upon the municipality's conduct, lack of actual knowledge or lack of the means of obtaining actual knowledge of the facts in question, and plaintiff must show a change in position to the extent that plaintiff would incur "a substantial loss were the local government allowed to disaffirm its previous position". Antieau, *supra*, p 16A-7. The question before us is whether the doctrine of estoppel should apply in this instance to preclude defendant from successfully asserting that plaintiff was not a police officer entitled to the protections of ordinance 45.

A municipality may be subject to the doctrine of estoppel in certain situations. 4 McQuillin, Municipal Corporations (3d ed), § 12.175A, p 15; 6 McQuillin (3d ed), § 20.13, p 34; and 10 McQuillin (3d ed), § 29.103, pp 500–501. A significant Michigan decision on this question is *Webb v Wakefield Township,* 239 Mich 521, 526–528; 215 NW 43 (1927), wherein the Court collected a number of previous authorities and said that while a municipal corporation may not go beyond its powers, the defense of *ultra vires* is inapplicable where the subject matter of the disputed contract is within the municipality's power and is not illegal. The municipality is bound by its dealings even if that power had been exercised in an irregular fashion or in disregard of directory provisions in its charter regarding the exercise of that power. *Webb*

found that the township had the authority to provide funds to purchase the snow plows at issue, that the purchase of the snow plows was within the legitimate needs of the township, and that the irregular exercise of the township's contracting procedures would not afford the township the opportunity to rely upon *ultra vires* as a defense to plaintiff's request for payment for the two snow plows. It was further pointed out that the township had retained the benefits of the allegedly "illegal proceedings". 239 Mich 521, 528–529. Thus, it seems that Michigan falls within the general rule that while the doctrine of estoppel is inapplicable to *ultra vires* acts, it will be applied to bind the municipality if the act is within the municipality's general powers, but is performed in an irregular fashion or in an unauthorized manner. 2 Antieau, Municipal Corporation Law, § 16A.04, pp 16A-9-10.

In the case before us, defendant was clearly authorized by statute to maintain a police department and to employ and appoint a police chief, police officers, and to make and establish appropriate rules and regulations for the maintenance of such a department. MCLA 41.855; MSA 5.2640(35). Defendant's ordinance 45 provided for a police department, and the township board established rules and regulations for the department. An examination of the specific sections of that ordinance regarding the appointment and promotion of police officers reveals that plaintiff was not appointed or promoted according to those sections. In particular, we note that the township supervisor has the authority, "[s]ubject to the approval of the Township Board", to change titles, and/or create officers and positions within the police department. Ordinance 45, § 1B(4). Ordinance 45, § 2 provides the

general regulations applicable to the police department. In particular, § 2A(1) provides that the supervisor "shall fill the vacant position in the police department, basing his decisions upon the application, the results of the examinations, and the recommendations of the police chief". Section 2C provides that all members of the department "shall be entitled to the rights granted under this ordinance and shall be considered to have been employed in such Police Department in accordance with the qualifications and methods of employment set forth herein". Section 2E provides the requirements for employment as a police officer, and § 2G provides the procedures necessary to fill a vacancy in the department. Section 2H provides for a written examination, and § 2I provides that the township supervisor is to submit applications and examination results, plus his recommendations, to the township board. The board "shall then fill the vacant position in the Police Department". Section 2J provides for promotion within the police department. Plaintiff's position within the department clearly did not follow these sections, although she was administered a constitutional oath of office pursuant to § 2F, and apparently was sworn in upon the recommendation of the police chief as provided in § 2A(1).

A municipal body is not estopped by the unauthorized or illegal acts of its officers, and it has been held that a drain commissioner, lacking the authority to speak on behalf of the county board of supervisors, did not estop that board from denying the validity of some bonds. *Highland Park v Oakland County Drain Commissioner,* 300 Mich 501, 508–509; 2 NW2d 479 (1942). See also 11 Michigan Law & Practice, Estoppel, § 13, pp 79–82, and 31 CJS, Estoppel, § 143, pp 719–722. Where Detroit's

charter afforded its board of estimates the power of appropriation, appointments made by the common council after the board of estimates specifically struck those items from the budget were held to have been illegal and void in *Robinson v Detroit,* 107 Mich 168, 171–172; 65 NW 10 (1895). A contract entered into between the president of a village and an attorney for legal services for the village was found to be void, where the president of the village, lacking the authority to do so, entered into the contract after the village trustees' vote had ended in a tie as to whether or not to employ plaintiff. Although the contract was invalid, the Court in *Moore v Detroit,* 164 Mich 543, 549; 129 NW 715 (1911), held that the attorney was entitled to compensation for the reasonable value of his services, but was not entitled to compensation according to the terms of the contract. On the other hand, where an attorney was hired by a village president with a consent of the majority of the trustees, but without the necessary formal action of the council, it has been held that the village was estopped to deny liability for the value of the attorney's services. *Hosner v Village of Leonard,* 163 Mich 92, 94; 127 NW 749 (1910). The Court further noted that in absence of any action by the village council to provide for plaintiff's employment and in light of the need for legal advice so that the president of the council could effectively enforce the village's ordinances, the president had the authority to hire the plaintiff. 163 Mich 92, 94.

The doctrine of *ultra vires* will be applied to preclude a city from engaging in a course of conduct where it specifically lacks the authority to do so. Where there was no power to purchase real estate in light of the absence of specific provisions

in the annual appropriations bill, *Salzer v East Lansing,* 263 Mich 626, 629–631; 249 NW 16 (1933), affirmed an injunction against such a purchase. Estoppel did not apply where defendant lacked the power to engage in that specific course of conduct. In our case, defendant clearly had the authority to maintain a police department and to hire police officers. The hiring of police officers was not wholly outside of its power but rather it was an act which defendant had the right to do in some circumstances and in a particular manner. Since the subject matter at issue is within the township's powers, and because the infirmity before us lies only in the irregular exercise of that power and in the apparent breach of the charter provisions regarding the hiring and promotion of police officers, it seems that defendant's acts in promoting plaintiff to the status of police officer was *intra vires* rather than *ultra vires.* See *Bator v Ford Motor Co,* 269 Mich 648, 668; 257 NW 906 (1934), which, although involving a different factual situation, contained a discussion of the relevant legal rule which we find applicable to our case. See also *DiPonio v Garden City,* 320 Mich 230, 237–238; 30 NW2d 849 (1948).

In *Jourden v Wyoming Township,* 358 Mich 496, 499; 100 NW2d 284 (1960), the Court held that estoppel was inapplicable where the township clerk had misinformed plaintiff of the terms of a licensing regulation regarding the maintenance of a scrapyard. The township board had the specific authority to grant or deny a license, and the Court found that the clerk's misinformation to plaintiff would not act to estop the township from enforcing that regulation. 358 Mich 496, 499. The casual, private advice of three members of a township board to a person interested in establishing a drag

strip that a suit by the township to preclude the establishment of that drag strip would be dismissed was held not to have been sufficient to estop the plaintiff from maintaining his suit to enforce the ordinance. *White Lake Township v Amos,* 371 Mich 693, 699; 124 NW2d 803 (1963). The Court there noted that the township's officers had the "sworn duty" to enforce the zoning ordinance at issue, and to "prosecute all violations thereof". It was noted that the duty to enforce the ordinance was not a personal duty, nor was it one which could be estopped by the actions of some individual officials. 371 Mich 693, 699. Our case does not involve the enforcement of a regulatory ordinance or a claim that the township is estopped from enforcing and exercising one of its police powers. Rather, the instant case involves the application of estoppel to a claim for goods and services, in particular labor, which, after accepting the benefits thereof, the municipality may not deny a responsibility therefor. See 56 Am Jur 2d, Municipal Corporations, § 520, pp 573–575 and §§ 526–527, pp 581–584. Thus, rather than the enforcement of an ordinance situation such as that involved in *Amos, supra,* we find that the case before us compares to and should be governed by cases previously discussed as well as *American La-France & Foamite Industries, Inc v Village of Clifford,* 267 Mich 326, 331–334; 255 NW 596 (1934), where the Court applied the doctrine of estoppel and precluded the village from asserting as a defense the mere irregularity in executing a contract for purchase of a fire engine, and *Standard Transformer Co v Detroit,* 146 F Supp 740, 742 (ED Mich, 1956), wherein the Court stated:

"A municipality cannot accept the benefits of per-

formance and then set up violation of its charter, or council procedure, as defense for refusal to pay."

*Foamite* noted, "The officers are presumed to have acted legally and not to have transcended their statutory powers". (Citation omitted.) 267 Mich 326, 330. Thus, perhaps plaintiff could assume that the township clerk, who administered the oath to plaintiff, and the township supervisor, who by ordinance 45, §§ 1A and 1B(1), had general supervision and control over the police department, were acting within their authority when plaintiff was sworn in as a police officer and issued a badge. Also, the supervisor signed plaintiff's identification cards, which indicated that she was a certified member of the police department. On the other hand, there is authority for the proposition that one who deals with a city must take notice of that city's officers' authority and is bound to know whether those officials have acted legally or illegally in their dealing with plaintiff. *Baker v Kalamazoo,* 269 Mich 14, 19; 256 NW 606 (1934). See also *Allied Supermarkets, Inc v Grocer's Dairy Co,* 391 Mich 729, 736–737; 219 NW2d 55 (1974), for another situation in which plaintiff, knowing the particular plan and having assented thereto, was found to have been estopped from objecting and raising a claim as to the merits of that problem. Plaintiff herein was aware that the township board, on May 19, 1969, had deleted the rank of dispatcher from the listing of ranks of police officers found in the department's rules and regulations. Perhaps one could argue that plaintiff, having been aware of the fact that a dispatcher was not an officer, could not now complain that she was in fact an officer.

However, plaintiff did more than perform mere clerical or dispatching chores. We have seen that

she searched and guarded prisoners. She inspected garbage trucks. She, in fact, assisted in the arrest of one person inside the station after discovering an outstanding warrant on that person. She subjected herself to risks beyond those normally associated with clerical and dispatching duties. In addition, former police chief Tobin testified that he took advantage of plaintiff's swearing-in and increased her duties so as to allow another patrol car to be out on the road. Thus, defendant, by its agents and officers, specifically used plaintiff to perform certain non-patrol police functions so as to better utilize its other police personnel. Despite plaintiff's apparent knowledge of the elimination of dispatcher as a police ranking, we find that on balance, plaintiff had the appearance and apparent authority as a police officer. Further, plaintiff expended time, energy, and some money (although defendant paid for some of the courses) in taking a number of courses in various aspects of police work, subjected herself to the above-mentioned risks, and thus met the requirement of detrimental reliance. Thus, defendant is estopped from denying that plaintiff was entitled to the protections of ordinance 45 as far as the dismissal of police officers is concerned. Therefore, ordinance 45, § 2L was violated when formal written charges were not preferred against plaintiff and when plaintiff was not afforded a hearing before the police appeal board to meet those charges. Thus, plaintiff was wrongfully discharged from her position and is entitled to some relief. Our resolution of this issue makes it unnecessary to discuss the somewhat related question of whether plaintiff was a "de facto" officer.

Plaintiff, as a member of the police department, was a public officer. *Blynn v Pontiac,* 185 Mich 35,

42–43; 151 NW 681 (1915). Generally, a wrongfully removed or suspended officer can secure and protect his claim for unpaid compensation and reinstatement even though the officer failed to perform any duties during the period of discharge or suspension. 2A Antieau, Municipal Corporation Law, § 22.14, p 281, and *People ex rel Benoit v Miller*, 24 Mich 458; 9 Am R 131 (1872), a quo warranto decision cited in Antieau in support of this proposition. Thus, by failing to exercise her duties, plaintiff, whom we have found was wrongfully discharged from her position, did not waive her right to seek reinstatement with back pay.

Generally, a wrongfully discharged person is entitled to damages equal to the salary level at time of discharge, less the amount of money which the discharged employee earned from other employment during the period of discharge. 53 Am Jur 2d, Master and Servant, § 62, pp 135–137, 22 Am Jur 2d, Damages, § 70, pp 104–106, *Edgecomb v Traverse City School District,* 341 Mich 106, 116–117; 67 NW2d 87 (1954), and the authority cited therein.

An exception to this rule of mitigation is found in 150 ALR 100, Anno: *Earnings or opportunity of earning from other sources as reducing claim of public officer or employee wrongfully excluded from his office or position.* Generally, a wrongfully discharged public officer is entitled to full back pay without the doctrine of mitigation of damages having to be applied to that employee's claim. 150 ALR 100, 102. Among the authorities cited for that proposition, we find *People ex rel Benoit v Miller,* 24 Mich 458; 9 Am R 131 (1872), the previously mentioned quo warranto proceeding brought on behalf of an elected official illegally kept out of his office when the former official "held

over" and precluded Benoit from assuming his lawful position. Apparently, the general rule is that a contract of employment is not involved, and that the officer's compensation is an attribute of the office. 150 ALR 100, 103. See also *Newberry v Smith,* 157 Mich 181, 184; 121 NW 746 (1909).

However, we find that plaintiff is not entitled to any money damages. In *McClain v Royal Oak Township,* 276 Mich 185, 187; 267 NW 613 (1936), plaintiff, having been hired as a relief man for defendant's fire department and subsequently discharged, argued that his firing had violated a predecessor of the veterans' preference act, MCLA 35.401 *et seq.;* MSA 4.1221 *et seq.* Because the act failed to provide for back pay upon a finding of unlawful discharge, *McClain* held that plaintiff was not entitled to recover back pay. 276 Mich 185, 188–189. Subsequently, the act was amended to allow for reinstatement with full back pay, and the Supreme Court found that a fireman, discharged in violation of the amended veterans' preference act, was entitled to recover full back pay during the period of his discharge in light of the mandatory requirement of the statute. *Lilienthal v Wyandotte,* 286 Mich 604, 618; 282 NW 837 (1938). See MCLA 35.402; MSA 4.1222.

We have found that plaintiff was a police officer entitled to the protections of defendant's ordinance 45, § 2L and the rules and regulations, particularly articles 13 and 17, enacted pursuant to the ordinance and MCLA 41.855; MSA 5.2640(35). Her discharge was wrongful because she was removed from her position in violation of that section. That section does not provide for back pay upon reinstatement. Defendant has not adopted the civil service system, and the provisions of MCLA 38.514; MSA 5.3364, which allow for reinstatement

with full back pay, is thus inapplicable to plaintiff's situation. Therefore, as in the case of the discharged fireman in *McClain, supra,* we must find that plaintiff is not entitled to her back pay, and this finding makes it unnecessary for us to determine whether or not the doctrine of mitigation of damages applies in this situation.

Reversed and remanded for plaintiff to be reinstated as a police officer. No costs, a public question being involved.