CROSS v WHEDON

Docket No. 78-816. Submitted June 13, 1979, at Detroit.—Decided
    October 15, 1979.

    Plaintiffs, Joyce Cross, Harold Di Pasquale, Almer H. Gruebener,
    James E. Hall, James Lafferty, William Ringler, Alfred N. Sahr
    II, Walter F. Steffens, and Ella Jane Trombley, employees of
    the City of Mount Clemens, sued it and its city manager, Edwin
    E. Whedon, to prevent the city from enforcing its residency
    requirement against them. William Ringler is the city trea-
    surer, whose residency was required by the city charter, but
    that requirement had been ignored from the late 1950's until
    November, 1971. In 1956 the city adopted a residency require-
    ment rule and in November, 1971, began to enforce it against
    plaintiffs. A suit to prevent enforcement was begun by the
    American Federation of State, County and Municipal Em-
    ployees (AFSCME) and, in May of 1972, the city adopted
    guidelines for granting exceptions to the residency rule. The
    AFSCME suit was dismissed and the city again moved to
    enforce the rule. Plaintiffs filed this suit in the Macomb Circuit
    Court and George R. Deneweth, J., granted plaintiffs an injunc-
    tion, noting that all were hired during a time when the city's
    attitude toward enforcement of the residency requirement was
    ambivalent. The court also found that some of the plaintiffs
    were hired even though they evidenced a negative attitude

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 527.
    Applicability of doctrine of estoppel against government and its
    governmental agencies. 1 ALR2d 338.
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 421, 528.
    63 Am Jur 2d, Public Officers and Employees § 47.
    Applicability of doctrine of estoppel against government and its
    governmental agencies. 1 ALR2d 338.
[3, 5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 247, 421.
    63 Am Jur 2d, Public Officers and Employees § 47.
    Applicability of doctrine of estoppel against government and its
    governmental agencies. 1 ALR2d 338.

about moving into the city and that it would be manifestly unfair and unjust to require plaintiffs to move into the city. Defendants appeal. *Held:*

1. Estoppel may arise against a municipal corporation where positive acts of municipal officials induced a party to act in a certain manner and where the party, relying on the official's acts, incurred a change of position or made expenditures. Estoppel will not lie where the municipal corporation acted beyond its powers but will where the matter is within the municipal corporation's authority and not illegal, even where the power has been exercised in an irregular fashion or in disregard of a directory provision in its charter.

2. A municipal body is not estopped by the illegal or unauthorized acts of its officers or employees. A municipal corporation is not estopped from asserting a residency requirement for employment in the city charter for which there is no exception, even after a history of ignoring the provision. The city may enforce the residency requirement against its treasurer.

3. A municipal corporation is not estopped from asserting a residency requirement against an employee who was hired prior to the adoption of a residency rule, who, when the rule was adopted was told to and did move into the city, who married a nonresident and moved out of the city without telling anyone and against whom the city took no action for six years.

4. A municipal corporation is estopped to assert a residency requirement for which the city commission may make exception for good and sufficient reason against: an employee who was told by his department head when he hired in not to worry about it and who would not have accepted the employment had he known the residency requirement would be enforced; an employee who indicated on his job application that he could not maintain residency but was hired anyway and who would not have accepted employment had he known the requirement would be enforced; an employee who was told by the city manager that residency was not being enforced and who would not have accepted employment had he known the requirement would be enforced; an employee who was told by the assistant personnel director that residency would not be required of him and who had the references to required residency crossed off his employment application by the assistant personnel director; and an employee who moved out of the city after being informed by the police chief that the residency requirement was

not being enforced. In each case there was a substantial change of position induced by reliance upon the acts of the city.

Affirmed in part and reversed in part.

N. J. KAUFMAN, J., concurred in part and dissented in part. He would hold that, as to those employees who either indicated on their employment applications that they could meet the residency requirement or ignored the question, the city is not estopped to enforce the requirement.

OPINION OF THE COURT

1. ESTOPPEL — MUNICIPAL CORPORATIONS.

Estoppel may arise against a municipal corporation where positive acts of municipal officials induced a party to act in a certain manner and where the party, relying on the official's acts, incurred a change of position or made expenditures; estoppel will not lie where the municipal corporation acted beyond its powers but will where the matter is within the municipal corporation's authority and not illegal, even where the power has been exercised in an irregular fashion or in disregard of a directory provision in its charter.

2. ESTOPPEL — MUNICIPAL CORPORATIONS — EMPLOYERS AND EMPLOYEES — RESIDENCY REQUIREMENTS.

A municipal body is not estopped by the illegal or unauthorized acts of its officers or employees; a municipal corporation is not estopped from asserting a residency requirement for employment in the city charter for which there is no exception, even though there is a history of ignoring the provision.

3. ESTOPPEL — MUNICIPAL CORPORATIONS — EMPLOYERS AND EMPLOYEES — RESIDENCY REQUIREMENTS.

A municipal corporation is not estopped from asserting a residency requirement against an employee who was hired prior to the adoption of a residency rule, who, when the rule was adopted was told to and did move into the city, and who married a nonresident and moved out of the city without telling anyone, even though the city took no action against the employee for six years.

4. ESTOPPEL — MUNICIPAL CORPORATIONS — EMPLOYERS AND EMPLOYEES — RESIDENCY REQUIREMENTS.

A municipal corporation is estopped to assert a residency requirement for which the city commission may make exception for good and sufficient reason against: an employee who was told by his department head when he hired in not to worry about it and who would not have accepted the employment had he

known the residency requirement would be enforced; an employee who indicated on his job application that he could not maintain residency but was hired anyway and who would not have accepted employment had he known the requirement would be enforced; an employee who was told by the city manager that residency was not being enforced and who would not have accepted employment had he known the requirement would be enforced; an employee who was told by the assistant personnel director that residency would not be required of him and who had the references to required residency crossed off his employment application by the assistant personnel director; and an employee who moved out of the city after being informed by the police chief that the residency requirement was not being enforced.

CONCURRENCE IN PART, DISSENT IN PART BY N. J. KAUFMAN, J.

5. ESTOPPEL — MUNICIPAL CORPORATIONS — EMPLOYERS AND EMPLOYEES — RESIDENCY REQUIREMENTS.

   *A municipal corporation should not be estopped from enforcing its residency requirement against employees by the mere fact that someone told them the residency requirement was not being enforced where they were asked on their employment applications whether they could maintain residency if hired and they either answered that they could or ignored the question.*

*Dank, Treppa & Sowle,* for plaintiffs.

*Daner, Freeman, McKenzie & Matthew, P.C.* (by *Kenneth E. Scherer* and *George J. Freeman),* for defendants.

Before: J. H. GILLIS, P.J., and N. J. KAUFMAN and R. M. RANSOM,* JJ.

J. H. GILLIS, P.J. Defendants appeal from a decision of the Macomb County Circuit Court which held that the City of Mount Clemens was estopped from enforcing its residency requirement against the nine named plaintiffs. Plaintiffs are employed in various capacities by the city.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

In 1956, the city adopted personnel rule 6.1, which provides:

"Residence: Employees in the competitive service need not be residents of the City of Mount Clemens at the time of appointment, but shall establish residence within the City within one year after appointment and shall maintain such residence during employment by the City. Employees in the competitive service not residing within the City at the time of adoption of these rules shall establish residence within the City within six months and shall maintain such residence during employment by the City. The City Commission may make exceptions to the residence requirements for good and sufficient reason."

One of the plaintiffs, William Ringler, is the City Treasurer. As an officer, his residency is required by § 65 of the Charter of the City of Mount Clemens, which provides, in pertinent part:

"All officers of the city shall be United States citizens. If any such officer is not a resident of the city at the time of his appointment, he shall become a resident thereof within 90 days after his appointment and shall so remain throughout his tenure in office."

The testimony indicates that this rule was enforced in the late 1950's but generally ignored thereafter. In November, 1971, a renewed effort to enforce the rule was made and the plaintiffs were instructed to move into the city or face dismissal.

A suit was initiated by AFSCME Locals 1884 and 2599 resulting in an injunction issued March 1, 1972, restraining the city from enforcing the residency rule.

In May, 1972, guidelines were adopted for granting exceptions to the residency rule. Seven of the

nine plaintiffs requested exceptions, which were denied.

Apparently the AFSCME suit was dismissed in September, 1975.

In May, 1976, the city sent a letter to all nonresident employees advising them that they would have to move into the city by October 1, 1976, or face dismissal. Plaintiffs then commenced the instant suit seeking injunctive relief.

In granting the requested relief, the trial court noted that all of the employees were hired prior to 1971, during a time the city's attitude toward enforcement of the residency rule was ambivalent. In addition, the court found that some of the plaintiffs were hired even though they evidenced a negative attitude about moving into the city. The court concluded that it would be manifestly unfair and unjust to require plaintiffs to move into the city and, therefore, held that defendants were estopped from enforcing the residency requirement against the nine plaintiffs.

We first note that, on the surface, residency requirements have been held to be constitutional, *Detroit Police Officers Ass'n v Detroit,* 385 Mich 519; 190 NW2d 97 (1971), although they may be unconstitutional in their application. *State, County & Municipal Employees Local 339 v Highland Park,* 363 Mich 79; 108 NW2d 898 (1961).

In the instant case plaintiffs concede that the current residency requirement passes constitutional muster. However, they contend that application of the doctrine of estoppel precludes the city from enforcing the requirement against them.

In *Parker v Twp of West Bloomfield,* 60 Mich App 583, 591; 221 NW2d 424 (1975), the Court ruled that estoppel could be applied to a municipality in certain situations, stating:

"Generally, estoppel may arise pursuant to the positive acts of municipal officials which induced plaintiff to act in a certain manner, and where plaintiff relied upon the official's actions by incurring a change of position or making expenditures in reliance upon the officials' actions."

Estoppel will not lie in every situation. A municipal corporation may not act beyond its powers. However, where the matter is within the city's authority and not illegal the municipality will be bound by its dealings even though the power has been exercised in an irregular fashion or in disregard of a directory provision in its charter. *Parker, supra,* 592.

In addition, a municipal body is not estopped by the unauthorized or illegal acts of its officers or employees. *Parker, supra,* 594. *Blackman Twp v Koller,* 357 Mich 186; 98 NW2d 538 (1959), *City of Highland Park v Oakland County Drain Comm'r,* 300 Mich 501; 2 NW2d 479 (1942).

In the instant case personnel rule 6.1 contained a provision for granting exemptions. Hence, a waiver of this residency requirement was obviously not outside the authority of the city so as to preclude application of estoppel. However, the charter provision applicable to William Ringler, the City Treasurer, provided for no exceptions. Moreover, this was not merely a "directory provision" as envisioned in *Parker, supra.* Therefore, there is no basis for application of the doctrine of estoppel to Mr. Ringler's case. The lower court erred as a matter of law in holding that the city was estopped from enforcing its residency requirement against William Ringler.

In addition, our *de novo* review of the record convinces us that the circumstances of some of the plaintiffs does not justify application of the doctrine of estoppel.

Joyce Cross was initially employed by the city in 1955. After the residency rule was adopted she was told to move into the city. She did so in 1958. In 1970 she married a nonresident and moved out of the city without ever informing anyone in the city of her intentions.

We fail to see any positive acts of the city which induced Ms. Cross to change her position in reliance thereon. She was well aware of the residency policy and, in fact, moved into the city because of it. Her move in 1970 was not induced by any acts of the city and her assertion that following her move no immediate action was taken against her is insufficient to support a claim of estoppel.

The testimony of Alfred Sahr also fails to make out a case of estoppel. He bought a home outside of the city in 1973 because of statements made by his union representative that the residency rule had been dropped. Mr. Sahr admitted he never asked anyone from the city about the matter. There is no other competent evidence to support a claim of estoppel.

Harold Di Pasquale testified that he was aware of the residency requirement from the outset and has been attempting to comply with it. He failed to testify to any acts of the city which induced him to change his position in reliance thereon. Hence, the facts are insufficient to support a claim of estoppel.

The remaining plaintiffs presented evidence to support their claims of estoppel. James Hall testified that when interviewing for the job, he discussed residency with his department head and was told not to worry about it. He also stated that he would not have taken the job had he known that residency would be enforced.

Walter Steffens testified he indicated on his

application that he would not be able to maintain residence within the city but was hired anyway. He also stated he would not have accepted the job had he known the residency rule would be enforced against him.

Almer Gruebener testified that the city manager, Mr. Whedon, told him residency was not being enforced. Mr. Gruebener also stated that he would not have accepted a position with the city had he known the rule would be enforced.

James Lafferty testified he discussed the residency requirement with Carol Mitzner, whom he identified as the assistant personnel director, and she informed him that it would not be enforced. Mr. Lafferty also stated that when he pointed out the relevant clause on the employment application, Mrs. Mitzner crossed it out. Mr. Lafferty's employment application, with the clause deleted, was introduced as an exhibit.

Ella Jane Trombley testified that she moved out of the city in 1968 only after she was informed by the police chief that residency was not being enforced.

We find the testimony of these five plaintiffs to be sufficient to support their claim that the city should be estopped from enforcing the residency requirement against them. In each case there was a substantial change of position induced by reliance upon the acts of the city.

In addition, because the city charter gives the department heads the authority to hire and dismiss employees without confirmation by the city commission, defendants' contention that plaintiffs had no right to rely on the representations of these persons is without merit.

Defendants' other contentions do not merit discussion.

The decision of the lower court is affirmed as it relates to plaintiff James Hall, Walter Steffens, Almer Gruebener, James Lafferty, and Ella Jane Trombley. It is reversed as to Joyce Cross, Alfed Sahr, Harold Di Pasquale and William Ringler. No costs, a public question being involved.

R. M. Ransom, J., concurred.

N. J. Kaufman, J. *(concurring in part; dissenting in part).* I agree with most of the well written opinion of the majority. I disagree only with regard to the cases of Mr. Hall, Mr. Gruebener, and Ms. Trombley. I do not find that the evidence supports their claims of estoppel against the city.

Each of these three people completed and signed an application form which included the following certification:

"14. CERTIFICATE OF APPLICANT. Read carefully before signing.

*"I certify that all statements made on both sides of this application are true. I understand that any omission or misstatement of material facts will cause forfeiture of my rights to employment by the City of Mt. Clemens. I also understand that if appointed I must establish residence inside the city limits of Mt. Clemens within six months and remain a resident as long as I am employed by the City."*

The reverse side of the application contained the following question:

"8. PERSONAL INFORMATION

\* \* \*

"If appointed will you be able to maintain residence within the City?. . . . . Yes \_\_\_\_ No \_\_\_\_".

Mr. Hall and Ms. Trombley marked the Yes blank; Mr. Gruebener skipped the question.

The mere fact that someone told them the residency requirement was not being enforced changes neither the plain language of the applications nor these plaintiffs' representations on the applications. People cannot simply agree to ignore or violate a proper city rule and thereby establish immunity from the rule. The city should not be estopped from enforcing its residency requirement against these plaintiffs.

However, due to the city's previous lackadaisical enforcement policy, and in light of the time spent in hearings and on appeal, I would give the plaintiffs who must comply with the residency requirement six months from the date this opinion is released to move into the city.